623 So.2d 979 (1993)
James MEDDERS, Margaret Medders, James Medders, Jr., Melissa Kay Medders, Doris Mitchell Medders, Michael Hugh Medders, Charlotte Bradley Medders, Robert Winon Medders, Myra Lewellyn Medders, Dennis Randall Medders, Deborah Ann Harpole, and Harvey Medders,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY.
No. 07-CA-59570.
Supreme Court of Mississippi.
August 5, 1993.
Rehearing Denied September 23, 1993.
*980 Ralph Edwin Chapman, Chapman & Heaton, Dana J. Swan, Chapman Lewis & Swan, Clarksdale, for appellants.
Gerald H. Jacks, Andrew M.W. Westerfield, Jacks Adams & Westerfield, Cleveland, for appellee.
EN BANC.
BANKS, Justice, for the Court:

I
Involved in the dispute presently before the Court is whether the exclusivity of our worker's compensation statutory scheme bars recovery under an employer's uninsured motorist coverage (UM) where the uninsured motorist is uninsured only because he is a fellow employee acting in the course and scope of his employment. Resolution of that question requires us to interpret the words "legally entitled to recover" as used in the statute defining those claims for which uninsured motorist insurance is compelled. The trial court issued an order granting summary judgment denying coverage. We affirm.

II
United States Fidelity & Guaranty Company (USF & G) filed a complaint for interpleader pursuant to Miss.R.Civ.P. 22, listing as defendants, inter alia, the wrongful death beneficiaries of Clarence Medders. In the complaint which was filed March 18, 1988, USF & G alleged that it issued a business automobile liability insurance policy to L.B. Williams, d/b/a as Williams Ambulance Service (Williams). The policy was in effect on February 14, 1987, when an ambulance operated by an employee and agent of Williams, John Oswalt (Oswalt), collided with a truck owned by Georgia-Pacific Corporation and driven by Harold Hunter. At the time of the accident, Oswalt was transporting a patient, Elmer Franklin, Sr., to a hospital in Memphis, Tennessee. Also, riding in the ambulance was Clarence Medders (Clarence). Resulting from the accident were the deaths of all the ambulance passengers, personal injury to Hunter, and property damage to the truck.
Numerous claims were filed against Williams. USF & G then filed an interpleader action and had the claimants assert their *981 rights to the amount due under the terms and provisions of the policy. The liability policy issued to Williams had a single limit coverage for liability for bodily injury and property damage of $300,000 per accident. By the terms of the policy coverage was provided for seven automobiles. Also, USF & G provided that the most it would pay in uninsured motorist benefits was $25,000 per accident.
The Medders filed their "Answer to Complaint for Interpleader and Counterclaim" on April 19, 1988. They alleged affirmatively that the actions of ambulance driver and coemployee, Oswalt, were so grossly negligent as to remove the action from the purview of exclusion found in the Mississippi Workers Compensation Act (Act) so that they were entitled to the policy benefits and damages for the wrongful death of Clarence. The heirs also pled that the policy "contemplated that [Clarence] would be an `insured' under said policy and further that the Medders family received no personal workers compensation benefits and are not precluded from asserting this claim pursuant to any law or statute." They counter-claimed, asserting alternatively that in the event the court determined that they were not entitled to liability benefits, then the uninsured motorist benefits under the policy should be available to them. The heirs asserted further that if "stacking" were allowed, then they would be entitled to at least the sum of $125,000, since USF & G insured seven vehicles for $25,000 each.
One group of the claimants to the interpled funds, the heirs of Franklin, filed a "Motion for Summary Judgment as to Claims of Defendants, Medders, to the Interpled Funds." They alleged "upon information and belief" that the Medders received no personal worker's compensation benefits because none of them were dependent upon Clarence at the time of death not because of the inapplicability of the worker's compensation act. They claimed further that Williams' liability was limited to workers compensation benefits, as that was their exclusive remedy. Additionally, they argued that the business auto section of the liability policy issued to Williams contained certain exclusions which barred the Medders' claim. The section reads:
WE WILL NOT COVER  EXCLUSIONS.
This insurance does not apply to:
2. Any obligation for which the insured or his or her insurer may be held liable under any workers' compensation or disability benefits law or under any similar law.
3. Any obligation of the insured to indemnify another for damages resulting from bodily injury to the insured's employee.
4. Bodily injury to any fellow employee of the insured arising out of and in the course of his or her employment.
5. Bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured. However, this exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits.
USF & G filed an "Answer to Affirmative Matter and Counterclaim" alleging that pursuant to Mississippi law, uninsured motorist benefits were not available to Clarence, if he had lived, nor to his heirs. Following the filing of this answer, it filed a "Motion for Summary Judgment as to the Claims of Defendants and Counter-claimants Medders to Uninsured Motorist Benefits." In this motion, the insurer argued that because the Medders were limited to workers compensation benefits pursuant to Miss. Code Ann. § 71-3-9 (1972), its motion requesting dismissal of the complaint should be granted.
The Medders responded to the motion for summary judgment. In answer to USF & G's denial of liability coverage, they stated that the actions of the driver of the ambulance were of such a nature as to fall within the exception to the exclusivity rule. In the alternative, they asserted that if the actions did not fall within the exception to the rule, then the statute was unconstitutional, violative of due process and public policy. They also claimed that they were entitled to uninsured motorist benefits. Included in the answer was a cross-motion for summary judgment in which the Medders requested that the court determine that they were entitled *982 to uninsured motorist benefits, as a matter of law, pursuant to the terms of the policy.
USF & G responded to Medders cross-motion for summary judgment by claiming that worker's compensation benefits had been paid to the heirs and that the worker's compensation remedy was exclusive and prohibited action by them to reach uninsured motorist benefits. Requested the court to deny the cross-motion for summary disposition.
A hearing was held on USF & G's motion for summary judgment, after which the circuit court found that there were no genuine issues of material fact and that the motion should be granted. The court also dismissed the counter-claim filed by the Medders. The Medders perfected an appeal to this court.

III
The facts about this tragic occurrence are gleaned from the deposition testimony of Earl Lake (Lake) who was deposed on November 7, 1986. His testimony was taken in connection with a suit brought by the Medders in federal court and was submitted in support of their answer and cross-claim for summary judgment.
Lake testified that during the late morning on February 14, 1986, he was conducting business. He recalled that the weather was inclement. "It was raining, light rain, but rain. The highway had water in it like it does, 61, the two sets where the tires go. And it was real foggy, just a fog rain ... The visibility was real bad." He testified that one could not see more than a quarter of a mile in any direction. The weather made the time of day seem later than it actually was. Just before the accident, he noticed that an ambulance was behind him travelling very fast. He stated that the ambulance seemed to emerge from the fog. Lake noticed that the headlights were illuminated and the emergency equipment activated. The siren was not on, however. He noticed that it was close to him and he thought that it was going to hit him given the speed it was going. He continued,
There was no way that I thought then that he could keep from hitting me. And I looked in the southbound lane, the eighteen-wheeler that was coming and I said: `There is no way this guy is going to try to pass me right now, he just can't do it and if he will just hold on, I am going to get out of his way.'
So I started to pull off the road as much as I could because I was going between fifty and fifty-five and I couldn't yank off the right, there was a low shoulder out there, just a few feet from the blacktop there, the edge of the road and I just couldn't yank off the highway but I was going to try to give him as much room as I could so when I saw him the first thing I did was take my foot off the gas and start pulling to my right. But when I did that I looked back in my mirror and he almost touched me then. So when I started to slow up here is somebody that is driving seventy-five or eighty miles an hour you know he gets real close to me then and I take my foot off the brake and start putting it back on the gas and started easing away from him.
Well, when I pulled off the road he starts pulling off the road right behind me to my right. I looked in my right view mirror on the right side of the truck and I saw the ambulance on the grass behind me with his nose down because he had gone off that low shoulder and he was back there just behind me like I was driving, you know.
And I said: `oh, God, what am I going to do?'
And I was just saying to myself, no matter what, I said: `He is going to hit me, but I don't want him to knock me in front of that truck.'
Because you know if he does it is going to be bad and I said I am just going to try to get away from him and so I kept going and we kept going and we went a few yards on up through there and he was on his brakes the whole time. And the reason I say that, I went back and looked and his left tire was just sliding the whole time that they was on that Bermuda grass behind me.
* * * * * *

*983 It looked like his left tire. Yeah. his back left tire. And he was just sliding back there and he was off to his right. When he dipped off that shoulder, I looked at him in the right mirror, he cut back to his left real hard which was back up toward the highway and when he did, he just lost control ... [W]hen he turned back up in the highway he way sideways of the highway headed west with the left front of the ambulance was in the southbound lane and when he did that, the truck, the eighteen-wheeler hit him right on his right front tire, spun the ambulance around southward and when it did, it threw everybody in the back out and I was looking at this in my mirror and saying: `Oh, God.'
When that truck hit him it just exploded that ambulance and I am up away from him on the right side of the road just barely going and looking at it and I saw the people in the back thrown out and this debris thrown everywhere and the ambulance fell off the side of the highway and crashed over its right side.
After witnessing the collision, Lake drove to the nearest store, and phoned the Sheriffs department and reported the accident. After placing the call, he then returned to the scene of the wreck.
The deposition of Harold Hunter was taken on behalf of the heirs on December 19, 1986. After the accident, Hunter experienced physical and emotional problems. He had difficulty remembering things and was under psychiatric care. As to what happened, this witness' testimony substantiated that of Lake's. He did not know of anything that he or the driver of the truck could have done to get out of the ambulance's way.

IV
The present dispute arises in the context of a grant of a summary judgment motion. Thus, analysis begins with the guidelines to which a trial court must adhere when presented with such a motion. Miss. R.Civ.Pro. 56 provides for summary disposition in cases where there is no genuine factual dispute between the parties. Allen v. Mayer, 587 So.2d 255 (Miss. 1991). The lead case outlining the procedure to be followed by a trial court before granting or denying a summary judgment motion is Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983). There, we held that a trial court, when presented with a motion to summarily dispose of a case, must review, carefully, all evidentiary matters. If, after review, there is no genuine issue as to any material fact, then the moving party is entitled to judgement as a matter of law. Allen, 587 So.2d at 259 quoting Brown, 444 So.2d 358, 362. It is against the backdrop of these principles that the trial court's actions are examined.

V
The Medders contend that the trial court erred in holding that they could not avail themselves of UM benefits because worker's compensation was their exclusive remedy for the death of Clarence. USF & G responds that the Medders' claim for UM benefits is barred by both the express provisions of the UM statute as well as the language of the policy in question. Both statute and policy only allow recovery of those sums the Medders are legally entitled to recover from a UM; the insurer claims further that the heirs are not legally entitled to recover because the alleged UM was a co-employee and the exclusive remedy provision of the compensation act bars recovery in these instances.
The record and applicable case law is supportive of USF & G's contention. Although an issue of first impression, this Court does not travel in uncharted territory. Other courts have addressed the issue presented by the heirs. In fact, the United States Court of Appeals for the Fifth Circuit, construing our law in a case directly on point, held that a claim for UM benefits for work-related injury is barred by the exclusive remedy provisions of worker's compensation. See Perkins v. Insurance Co. of North America, 799 F.2d 955 (5th Cir.1986).
In disposing of the issue one must of necessity speak to the interrelationship between the exclusive remedy clause of the compensation act and the coverage of the UM statute. The UM statute is codified at Miss. Code Ann. § 83-11-101 (1972). It provides in relevant part,

*984 No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle... .
Id. (emphasis added)
Section 71-3-9 of the code embodies the worker's compensation act. There, it is written in parts relevant to this discussion, "[t]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee." Id. See also, Sawyer v. Head, 510 So.2d 472 (Miss. 1987) ("liability cannot be imposed on employer under both common law and Worker's Compensation Act, as entitlement to one excludes the other; decedent was either injured while acting within the course and scope of employment thereby making employer liable under the Worker's Compensation Act, or was injured while not acting in the course of employment thereby possibly rendering employer liable under common law negligence liability"); Perkins v. Insurance Co. of North America, 799 F.2d 955 (5th Cir.1986) citing Williams v. Munford, Inc., 683 F.2d 938, 940 (5th Cir.1982), Ray v. Babcock and Wilcox Co., 388 So.2d 166, 68 (Miss. 1980); Taylor v. Crosby Forest Products, 198 So.2d 809, 812 (Miss. 1967) (all quoting exclusivity language found in statute).
Further, this immunity extends to actions between co-employees as well. Indeed, the statute contemplates that an employee injured in the scope of his employment by the negligence of a co-employee may not recover from the co-employee, at common law or otherwise, because worker's compensation is the employee's exclusive remedy for work-related injuries against either his employer or co-employees. Perkins, 799 F.2d at 959; McCluskey v. Thompson, 363 So.2d 256 (Miss. 1978); Stubbs v. Green Brothers Gravel Co., Inc., 206 So.2d 323 (Miss. 1968).
The interrelationship between the statute and the Medders' ability to bring suit and recover damages turns on the language in the UM provision, legally entitled to recover. Many courts have interpreted and assigned meaning to this phrase. Medders cites decisions from several jurisdictions which hold that the phrase only means that the injured party be able to establish fault and the fact that the uninsured motorist may be able to assert an affirmative defense should not operate to deny coverage.
The Medders cite the case of Murphy v. U.S. Fidelity and Guar. Co., 120 Ill. App.3d 282, 75 Ill.Dec. 886, 458 N.E.2d 54 (1983). The heirs assert that the Murphy Court interpreted the phrase as a "condition of the insured's right to recover from the insurer", designed to indicate fault and not bar recovery from the insurer because the tort-feasor could have asserted a statute of limitations defense. Id. 75 Ill.Dec. at 889, 458 N.E.2d at 57. USF & G responds, correctly, that the issue in Murphy was whether or not an insured's action to compel arbitration of her UM claim against the insurer was governed by the two-year statute of limitations applicable to personal injury actions; the court's definition of the phrase in the context of an arbitration proceeding is of little or no consequence in the present factual scenario. Moreover, in a decision factually similar to the one at bar the appeals court in Illinois held that where an accident between insured and uninsured motorists arose out of and in the course of their employment, a common-law action between them was precluded and the insured was not entitled to recover under uninsured motorist clause. Williams v. Country Mutual Insurance Company, 28 Ill. App.3d 274, 328 N.E.2d 117 (1975).
The Medders contend that the Oklahoma Supreme Court in Barfield v. Barfield, 742 P.2d 1107 (Okla. 1987), allowed coverage despite immunity created by worker's compensation. In Barfield, a widow who had received workers' compensation benefits after her husband was killed during the scope and course of his employment in an accident allegedly caused by the negligence of a co-worker, brought a wrongful death action against the co-worker's estate and against her husband's insurer to recover under an uninsured motorist policy. The court held that the exclusivity provisions of the workers' compensation act precluded the widow's suit *985 against her husband's co-employee. It stated that, because the workers' compensation court provided benefits to the widow, she was not legally entitled to recover any damages from the co-employee's estate. Id. at 1111.
The court held, however, that the status and actions of the tortfeasor were irrelevant to and did not preclude suit by the widow under her husband's own uninsured motorist policy. Specifically it held that the suit involved a purely contractual claim against the husband's insurer. "Employer-Employee tort immunity under the Workers' Compensation Act does not preclude recovery under one's own contract of insurance with an insurance carrier unrelated to the employer-employee relationship." Id. It continued,
Protection under an uninsured motorist policy is a contractual right resting in the insured and thus may be co-existent with the protection under the Workers' Compensation Act. (citations omitted) An uninsured motorist carrier does not stand in the tortfeasor's shoes and the conditions for recovery under an uninsured motorist policy can be satisfied even if the insured cannot prove all the elements of the tort against the uninsured. Uptegraft v. Home Insurance Company, 662 P.2d 681 (Okla. 1983) at 685 states:
"The words `legally entitled to recover' simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." (footnote omitted)
Though fault is not an issue in a Workers' Compensation proceeding, such is not exclusively litigable in a common law tort action, but may be proved as a condition of recovery in an action founded upon contract.
* * * * * *
[Widow] merely seeks to recover under a policy which insured plaintiff's decedent against financially irresponsible motorists. Insureds are entitled to uninsured motorist coverage under their policies regardless of the circumstances that exist when they are personally injured through the fault of an uninsured motorist. (citation omitted)
* * * * * *
The contractual protection afforded by the decedent's own policy of insurance is thus co-existent and consistent with recovery of benefits through the insurance carrier of the decedent's employer pursuant to the provisions of the Workers' Compensation Act.
Id. at 1112-13. (emphasis added)
Thus, as argued by USF & G, the Medders have taken out of context that portion of Barfield which they state support their contentions. The widow was specifically prohibited from bringing suit against the co-employee and the company insurer due to the exclusivity provisions of the compensation act. The act did not, however, preclude suit against her husband's insurer for that agreement had no connection with the employment relationship.
Here, the Medders seek to sue the company insurer for the negligence of Clarence's co-worker. Thus, even in Oklahoma, Barfield would provide them no aid because it reaffirmed the principal as against the co-employee and employer that workers' compensation is the only remedy.
Karam v. Allstate Insurance Company, 27 Ohio App.3d 137, 500 N.E.2d 358 (1985) is cited in support of the Medders' position. There, the Ohio appellate court addressed parent-child immunity and its relationship to UM provisions in an insurance policy. That court drew a dubious distinction between statutory and common law immunity and decided that the latter immunity was insufficient for the not-legally-entitled-to-recover defense. The Ohio Supreme Court had earlier, in York v. State Farm Fire & Cas. Ins. Co. 64 Ohio St.2d 199, 414 N.E.2d 423 (1980), held that the statutory immunity accorded fireman responding to fires was a bar to recovery on a UM policy. In Sumwalt v. Allstate Ins Co., 12 Ohio St.3d 294, 466 N.E.2d 544 (1984) the court distinguished York on the basis that the immunity involved in York was statutory. Both Karam and Sumwalt involved applications of the common law parent-child immunity doctrine. In *986 Sumwalt the mother was injured by the child and in Karam the child was injured by the mother. It is not insignificant that three justices in the Karam majority would have abolished the doctrine of parental immunity altogether. See, Glaskox v. Glaskox, 614 So.2d 906 (Miss. 1992).
The case of Thiel v. Allstate Ins. Co., 23 Ohio St.3d 108, 491 N.E.2d 1121 (1990) the Ohio court was presented with the co-worker issue here involved. Distinguishing York on the basis that fellow worker immunity is "conditional" depending upon whether the injured party successfully seeks workers compensation benefits, the court held that the statutory immunity of a fellow employee did not bar a suit by the surviving spouse to collect UM benefits for the death of her husband caused by the negligence of a co-employee has been overruled. Id. 491 N.E.2d at 1123. The court found that the words "legally entitled to recover" were ambiguous. Id. It therefore applied the doctrine of in para materia and looked to statutory provisions that UM coverage not be reduced by workers compensation benefits and concluded that no claim of not-legally-entitled-to-recover arises out of the "conditional immunity" of the workers compensation statute. Id. at 1123-1124.
In State Farm Mutual Automobile Insurance Company v. Webb, 54 Ohio St.3d 61, 562 N.E.2d 132 (1990), the Supreme Court of Ohio overruled Thiel, holding that workers compensation immunity barred recovery under an uninsured motorist policy. The court rejected both the "conditional" versus "absolute" immunity dichotomy and the in para materia rational relied upon by the Thiel majority. Id. 562 N.E.2d at 134. The court found the "legally entitled to recover" language unambiguous and amenable to but one interpretation, that where the tortfeasor is immune from liability there is no coverage.
Finally, the Medders assign much weight to State Farm Mutual Automobile Insurance Company v. Baldwin, 764 F.2d 773 (11th Cir.1985). There, a sergeant in the United States Army was injured when his motorcycle collided with a government vehicle being operated by a civilian employee of the United States Government. The sergeant was engaged in the performance of his duties at the time of the accident. He sought UM compensation under his automobile policy. His insurer brought a declaratory judgment action. On certification from the Eleventh Circuit Court of Appeals, the Alabama Supreme Court held that although the Feres doctrine, which provides that no cause of action arises against the United States Government or its employees for injuries incurred by a member of the military arising out of and/or in the course of his active military service, precluded recovery from the Government or the tortfeasor, the sergeant was nevertheless "legally entitled to recovery of damages" under the Alabama UM Act. Id. at 779; Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950.) In allowing suit, the court reasoned that the legislative policy of the Alabama UM statute made the Feres defense inapplicable. Id.
In Baldwin, as in Barfield, the insurance carrier sued was that of the injured party, Baldwin. There is no jurisdiction which holds that an injured employee has a cause of action against the employer's carrier for injuries arising out the negligence of fellow employees during the course and within the scope of employment. Indeed, the majority of jurisdictions, which have ruled on the issue with respect to the injured party's policy and all jurisdictions with respect to the employer's policy, have held that the exclusive remedy of worker's compensation bars recovery of UM benefits when the insured is injured by a co-employee. See, Allstate Ins. Co. v. Boynton, 486 So.2d 552 (Fla. 1986), rev'ing 443 So.2d 427 (Dist.Ct.App. 1984); Williams v. Thomas, 187 Ga. App. 527, 370 S.E.2d 773 (1988); Davis v. Allstate Ins. Co., 452 So.2d 310 (La. App. 2 Cir.1984); Mayfield v. Casualty Reciprocal Exchange, 442 So.2d 894 (La. Ct. App. 1983); Gray v. Margot Inc., 408 So.2d 436 (La. Ct. App. 1981); Carlisle v. State Dept. of Transportation and Development, 400 So.2d 284 (La. Ct. App. 1981); Webb, 54 Ohio St.3d 61, 562 N.E.2d 132; Hopkins v. Auto-Owners Ins. Co., 41 Mich. App. 635, 200 N.W.2d 784 (1972); Kough v. N.J. Auto. Full. Ins., 237 N.J. Super. 460, 568 A.2d 127 (A.D. 1990); Cormier v. Nat. Farmers U. Prop. and Cas., 445 N.W.2d 644 (N.D. 1989); *987 Perkins v. Insurance Co. of North America, 799 F.2d 955 (5th Cir.1986) (Applying its perception of Mississippi law); Hubbel v. Western Fire Ins. Co., 218 Mont. 21, 706 P.2d 111 (1985); Aetna Cas. & Sur. Co. v. Dodson, 235 Va. 346, 367 S.E.2d 505 (1988); Peterson v. Kludt, 317 N.W.2d 43 (Minn. 1982); Sayan v. United Services Auto. Ass'n, 43 Wash. App. 148, 716 P.2d 895 (1986) (Holding the opposite of the Baldwin with respect to the Feres doctrine.)
This resolution of the issue is consonant with that indicated in a standard worker's compensation treatise which provides,
Ordinarily, for the uninsured motorist clause to operate in the first place, the uninsured third person must be legally subject to liability. Thus, if the third person is specifically made immune to tort suit by the compensation act's exclusive remedy clause, the uninsured motorist provision does not come into play. In the familiar example of co-employee immunity, the issue thus becomes whether the accident was in the course of employment; if it was, the uninsured motorist carrier has no liability.
Larson, 2A Workmen's Compensation Law § 71.23(j) at 14-37 (1983) (1987 Supp. at 14-44).
USF & G asks that the Court adopt the Perkins decision where the Fifth Circuit Court of Appeals construed Mississippi law and determined that under Mississippi worker's compensation exclusive remedy statute, an employee was not legally entitled to recover from employer or co-employee any damages for injuries he sustained as passenger in employer's truck. The truck was driven by uninsured co-employee and was being operated in the course of employment; thus, the contention was that the employee was not entitled to UM benefits under employer's policy covering truck. The co-employee-driver, as with Clarence, was insured as to everyone else except Perkins. Thus, Perkins claimed that he was eligible to claim benefits under the uninsured motorist provision of the employer's policy, pursuant to Miss. Code Ann. § 83-11-101(1) (1972).
In reaching its decision, the court reasoned that under the UM statute, Perkins was entitled to benefits from the insurer only if he was legally entitled to recover his damages from the owner or operator of an uninsured vehicle. Perkins, 799 F.2d at 958. The court found that under Mississippi law and the insurance policy Perkins was not legally entitled to recover from the owner or operator of the insured truck "any damages for injuries resulting from the accident, and thus he was not entitled to uninsured motorist benefits from [the insurer]."
The Perkins court relied upon our alternative holding in Aitken v. State Farm Mut. Auto Ins. Co., 404 So.2d 1040 (Miss. 1981) interpreting our statute to provide that the insurance carrier "succeeds to the defenses available to the so-called uninsured motorist. It [the tortfeasor] cannot be sued, then ... [the] insurance carrier cannot be sued... ." Id. As the Fifth Circuit noted, while this court has subsequently abandoned Aitken's other holding, that a policy holder was precluded from recovery under her UM coverage where the uninsured motorist was driving her car in which she was a passenger and thus was insured, State Farm Mut. Auto Ins. Co. v. Nester, 459 So.2d 787, 791 (Miss. 1984), the holding that interspousal immunity precludes recovery has never been disturbed.
In Mississippi, worker's compensation benefits are an employees exclusive remedy against his employer for "injuries sustained in the course of his employment." Id. citing Miss. Code Ann. § 71-3-9 (1972) ("The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee... ."). The Perkins court noted that
to hold [the insurer] liable in this instance would create the anomaly that Perkins would be better off with the driver uninsured than if the driver had carried an adequate personal liability insurance policy providing coverage for the driver's liability. If the driver had such a personal policy, then there could be no uninsured motorist claim by Perkins because the driver would be insured. However, in a suit against the driver, Perkins would not be able to preclude the operation of the exclusive remedy clause of Mississippi's worker's compensation statute because the driver could assert *988 his co-employee immunity. See McCluskey, 363 So.2d at 259. Thus, Perkins, under his argument, achieves a greater overall recovery than he would if the driver were adequately insured. We doubt that the uninsured motorist statute was intended to produce such a result.
Id. at 959.
The Medders contend that this Court does not look with favor on policy provisions designed to limit UM coverage. Limiting UM coverage is not in issue here, however, for there is no person from whom the Medders are legally entitled to recover damages pursuant to the UM policy or the statute; at least, not until the legislature defines the required coverage differently. Davis, 452 So.2d at 312.
In addition, the heirs cite the decisions of Preferred Risk Mutual Insurance Company v. Poole, 411 F. Supp. 429 (N.D.Miss. 1976)[1] and Rankin v. West American Insurance Co., 84 Cal. App.3d 829, 149 Cal. Rptr. 57 (1987). Both of these cases were appropriately addressed by the court in Perkins, 799 F.2d 955. There, it was explained that the Poole opinion "gives no direct indication one way or the other as to whether worker's compensation was in fact involved or at issue there." Perkins, 799 F.2d at 959. The court went on to write that other indications in the Poole suggest that worker's compensation was not in issue.
For instance, the district court wrote that the personal injury claimants ... were seeking to interpret the Mississippi Vehicle Safety Responsibility Act ... as `prohibiting liability coverage only which would duplicate the benefits under workmen's compensation, since in cases of that character the applicable workmen's compensation act provides the exclusive remedy for employees against the employer. Id. at 429 (emphasis added) ... [I]t is arguable that in Poole there was no assertion of claims which were exclusively covered by the worker's compensation laws. Thus a worker's compensation exclusivity argument may well have been unavailable to the carrier in Poole. In any event, it is clear that Poole did not address any such argument and that Poole does not on its face reflect that such an argument was available.
Id. at 959-60.
In similar fashion, the Rankin case is not analogous to the situation at bar. There, the California Court of Appeals allowed an injured employee to recover UM benefits after the employee had recovered worker's compensation benefits. However, a California statute expressly directed a set-off. The California Insurance Code contemplated that a "worker who is entitled to worker's compensation for an injury caused by the negligence of a third party may also make a claim for uninsured motorists coverage...." Perkins, 799 F.2d at 961. Such a legislative directive is absent here.
Moreover, Porter v. Shelter General Ins. Co., 678 F. Supp. 151 (S.D.Miss. 1988), contrary to the Medders assertion, does not sanction the Rankin set-off approach. In Porter, the liability policy there in question provided for a reduction of supplemental insured motorist benefits because of worker's compensation received by the beneficiary. The court held that under Mississippi law, parties are free to contract for supplemental benefits and the policy provision was enforceable with regard to those benefits. Thus, Porter, as distinguished from the instant case, involved a situation where the parties to the suit had contracted for supplemental benefits and the UM benefits were reduced by the amount received from worker's compensation; the benefits, however, could not be reduced below the statutory minimum.
Finally, it has been suggested that we adopt the rational of those cases, Barfield and Baldwin, which suggest that contractual relationship between an injured party and his own carrier dictates an interpretation favoring *989 coverage. The contention is that the employee, here Medders, should be considered a third party beneficiary of the employer's automobile insurance contract and that therefore the same rational should obtain. True, the premium payer distinction is dubious at best as a tool for interpreting the language in question. It is equally true that we have often relied upon the fact that the injured party has paid a premium for coverage to construe contractual and statutory provisions in favor of coverage. We noted that fact in In re Koestler, 608 So.2d 1258, 1264 (Miss. 1992).
To be sure, our stacking cases routinely take note of the payment of separate premiums. See, e.g., Harris v. Magee, 573 So.2d 646, 652 (Miss. 1990); Cossitt [v. Nationwide Mutual Ins. Co.] 551 So.2d [879] at 884 [(Miss. 1989)]; Brown v. Maryland Casualty Co., 521 So.2d 854, 856 (Miss. 1987); Government Employees Ins. Co. v. Brown, 446 So.2d 1002, 1005-06 (Miss. 1984); Southern Farm Bureau Casualty Ins. Co. v. Roberts, 323 So.2d 536, 538 (Miss. 1975). This is but an equitable note undergirding the fairness of the stacking mandated and enforceable by reason of contract. E.g., Pearthree v. Hartford Accident & Indemnity Co., 373 So.2d 267, 270 (Miss. 1979) ("a construction permitting ... [stacking] flows from the ambiguity of the limiting clauses ..., not from the charging of separate premiums"). No particular premium purchases any particular UM coverage beyond the limits of liability language in the policy.
In Koestler we affirmed the principle that unambiguous language in insurance policies as well as our statutory law must be construed in accordance with its usual meaning even where such a construction does not promote what may be a desired result. Id. All said, the question is whether we will construe language deemed ambiguous by some, only in the zeal to protect the injured, to mean less than it clearly says, which is, at a minimum, that in order for coverage to obtain the injured party must at the time of injury be "legally" entitled to recover. That is, coverage is mandated only where, at the time of injury, the sole impediment to recovery is the absence of insurance, the tortfeasor having no legal or factual defense.
We hold that the clear meaning of the phrase legally entitled to recover found in the Mississippi UM statute limits the scope of the coverage mandated by the statute to those instances in which the insured would be entitled at the time of injury to recover through legal action. Miss. Code Ann. § 83-11-101(1); Cormier, 445 N.W.2d at 647; Williams, 370 S.E.2d at 775. There is no statutory mandate to provide coverage in instances where the alleged tortfeasor is immune from liability.
The policy in question excludes coverage for injuries caused by fellow employees. USF & G is not liable under the terms of the policy.

CONCLUSION
The statutory language, legally entitled to recover, is "simply too unambiguous to admit of judicially created exception... ." Perkins, 799 F.2d at 962. For the forgoing reasons, the decision of the trial court summarily disposing of the case on the motion of USF & G should be affirmed.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and ROBERTS, J.
McRAE, Justice, dissenting:
Our statutes providing for uninsured motorist insurance and workers' compensation are intended to be liberally construed so as to provide coverage to an insured or claimant. The majority, however, has taken this "shield of protection," twisted it into a sword and plunged it into the heart of the claimant herein. We must remember that uninsured motorist coverage and workers' compensation, in many respects, provide entirely separate types of coverage. Uninsured motorist coverage, a contract by statute, is based on the fault of an uninsured driver. It provides compensation for wrongful death, total lost *990 wages and pain and suffering, both past and future, as well as loss of society or companionship. Workers' compensation, however, is based on a "no-fault" insurance contract. It was designed as a remedial measure to provide immediate relief for claimants injured on the job and therefore provides only limited minimal coverage for lost wages and medical care, but excludes such factors as pain and suffering and loss of companionship.
Uninsured motorist coverage is one of many optional comprehensive benefits an employer may provide for his employees as well as for himself. The employer may elect or reject uninsured motorist coverage for himself and his employees. By finding that recovery under an employer's uninsured motorist policy is precluded by the exclusivity of the workers' compensation remedy, the majority denies the employer the opportunity to provide himself or his employees the additional protection for which he has paid.
I disagree, therefore, with the majority's construction of the language "legally entitled to recover" in the uninsured motorist statute. Moreover, a third party insurer should not be able to invoke the exclusivity of the workers' compensation remedy as a defense to the payment of an uninsured motorist claim for which it has contracted. Accordingly, I dissent.

I.
The estate of Elmer Franklin, Sr., the patient being transported at the time of the accident, recovered $300,000.00 under Williams Ambulance Service's liability insurance policy. However, compounding the tragedy of Clarence Medders' death, his family received only $2,000.00 in Workers' Compensation funeral expenses. The funeral cost $3,369.00. Under the majority's decision, the Medders family cannot even recover the cost of Clarence's funeral, let alone damages for loss of companionship or society. Moreover, the majority has opined that the family is precluded from recovering $125,000.00 in uninsured motorist benefits from Williams' insurer because of the exclusivity of the workers' compensation remedy.

II.
In 1967, the legislature adopted the Mississippi Uninsured Motorist Vehicle Act, Miss. Code Ann. § 83-11-101 et seq. The Uninsured Motorist Act requires that no liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement provision undertaking to pay to the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle. The Uninsured Motorist Act was, in fact, largely a response to the insurance industry's lobby to alleviate problems with the increasing number of uninsured drivers on the roads. Therefore, uninsured motorist coverage was adopted as an alternative to either compulsory insurance programs or publicly administered judgment funds. Rampy v. State Farm Mutual Auto. Ins. Co., 278 So.2d 428, 432 (Miss. 1973).
We have recognized that the damages an individual is legally entitled to recover under an uninsured motorist policy are limited to only those items of compensation specifically enumerated in the statute: bodily injury, death and property damage. State Farm Mutual Auto. Ins. Co. v. Daughdrill, 474 So.2d 1048, 1051 (Miss. 1985). Because punitive damages were not expressly provided for in the initial statute or its amendments, the Daughdrill court found they were necessarily excluded. Id. Although the Workers' Compensation Act was adopted in 1948, the legislature, in drafting the Uninsured Motorist Act, made no provision, express or implied, for the exclusion of coverage in situations where workers' compensation benefits were applicable. The message in Daughdrill is clear  "a statute which enumerates and specifies the subjects or things upon which it is to operate, is to be construed as excluding from its effect those subjects not expressly mentioned or included under a general clause." Id. Since the legislature has had more than twenty-five years to make such an exclusion or exception, but has chosen not to, it obviously did not intend for any uninsured motorist claim to be precluded because of workers' compensation.
*991 In Rampy, we recognized that the uninsured motorist statute is to be liberally construed in favor of the insured to afford coverage wherever possible. Id. at 432. We further explained:
[a] provision, drawn by the insurer to comply with the statutory requirement of uninsured motorist coverage, must be construed in light of the purpose and policy of the statute. Such a provision, drawn in pursuance of a statutorily declared public policy, is enacted for the benefit of injured persons traveling on the public highways.
Id., quoting 7 Am.Jur.2d Automobile Insurance § 135.
Likewise, in State Farm Mutual Auto. Ins. Co. v. Nester, 459 So.2d 787, 792 (Miss. 1984), we observed that applicability of coverage is to be viewed from the perspective of the injured party, stating that "[i]t must always be noted that uninsured motorist coverage is designed for the benefit of insureds and not insurers." Id. at 792, citing Couch on Insurance, 2d Ed., § 45:624 at 35-36. The Nester Court further recognized that uninsured motorist coverage is required to be offered with all bodily injury liability policies. Because legislators have directed that our state motorists be so protected, every automobile liability insurance policy issued after January 1, 1980, has also provided de jure for uninsured motorist coverage of at least the statutory minimum, unless the insured expressly rejected that coverage. Any attempt to contractually limit an insured's duty of coverage is necessarily confined to the boundaries of the statute and may not be effected to narrow the requirements of that statute. Id. at 789. The Nester Court recognized that the statute defines an "uninsured motorist vehicle" as "a motor vehicle as to which there is an insured's existence but the insurance company writing the same has legally denied coverage" as well as an operator of a vehicle who has no insurance." Id. at 789-790.
Like the Uninsured Motorist statute, the Workers' Compensation statutes are intended to serve a beneficent purpose. Time and again, we have said that these statutes are to be construed liberally with any doubt resolved in favor of compensation. Robinson v. Packard Electric Div., General Motors Corp., 523 So.2d 329 (Miss. 1988); Barham v. Klumb Forest Products Center, Inc., 453 So.2d 1300 (Miss. 1984). Pitting these statutes against one another, the majority succeeds only in eviscerating the beneficent purposes each was intended to serve.

III.
The majority holds that the "clear meaning" of the language legally entitled to recover limits the scope of recovery under uninsured motorist coverage to those instances where the insured, at the time of his injury, would be entitled to recover through legal action, thus barring coverage where the alleged tortfeasor claims immunity from liability. This implies that the insured must actually seek a judgment against the uninsured motorist before establishing a claim. We rejected that idea in Harthcock v. State Farm Mutual Automobile Insurance Co., 248 So.2d 456, 460 (Miss. 1971). Instead, the phrase "shall be legally entitled to recover" should be construed to mean that the injured party must be able to establish fault on the part of the uninsured motorist and then is entitled to recover whatever damages are allowed by law. The Nester Court cited with approval Judge Keady's opinion in Preferred Risk Mutual Insurance Company v. Poole, 411 F. Supp. 429 (N.D.Miss. 1976), aff'd 539 F.2d 574 (5th Cir.1976). In Poole, three co-employees were killed in an accident while returning home from a job site in Tennessee. It was established that they were acting within the scope of their employment at the time of the collision. Heirs of the two passengers in the vehicle brought suit in state court, while Preferred Risk sought a declaratory action in federal court to determine whether it was liable. The District Court found that the insurer was so obligated, and cited the Uninsured Motorist Vehicle Act as the basis for its decision.
The Uninsured Motorist Vehicle Act, it is to be noted, is a distinct form of motorist insurance legislatively devised to cover certain motorist-connected losses where liability insurance otherwise would not obtain... .

*992 It is interesting to observe that under the Act, unlike traditional automobile liability insurance, the tort claimant need not first obtain judgment against the owner or operator of the uninsured automobile, for the "suit may be brought directly against the insurance company under its insurance contract in the first instance." Rampy v. State Farm Mutual Automobile Ins. Co., 278 So.2d 428, 435 (Miss. 1973); Harthcock v. State Farm, supra. It also needs no citation that the Act is to be liberally construed to maximize the humanitarian coverage it provides.
The Act's operative command is that the insurer must undertake "to pay the insured [as defined in the Act] all sums which he shall be legally entitled to recover from the owner or operator of an uninsured motor vehicle. ..."
411 F. Supp. at 436-37 (emphasis added).
In Harthcock, supra, we likewise stated that the purpose of the uninsured motorist provision in a policy is to provide the insured with a means of collecting that which he is legally entitled to recover for bodily injuries caused by an accident arising out of ownership, maintenance or use of an uninsured automobile. Id. at 459. This provision must be construed from the perspective of the injured insured, from whose standpoint a tortfeasor operating an automobile with no insurance available is an uninsured motorist. Id. at 458. See also Nester, 459 So.2d at 790; Poole, 411 F. Supp. at 439. Whether there is no insurance at all or a policy that is incapable of being applied to satisfy his claim because the tortfeasor's insurer lawfully disclaims liability, the injured insured is entitled to recover.
Other jurisdictions have construed the phrase "legally entitled to recover damages" so as to permit recovery under uninsured motorist policies even in those situations where the parties at fault raised immunity defenses analogous to the exclusivity of remedies provision in the Workers' Compensation statute. The Alabama Supreme Court, in State Farm Mutual Automobile Insurance Co. v. Baldwin, 470 So.2d 1230, 55 A.L.R.4th 797 (Ala. 1985), a case of first impression, refused to allow the government tort immunity granted by Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), to apply to uninsured motorist cases even though it agreed that the Feres doctrine precluded recovery from the government or its operator under a liability insurance policy.[1] Sergeant Baldwin was injured during the course of his duties on a military base when his motorcycle was struck by a government vehicle driven by a civilian employee of the United States Government. He and his wife sought to recover under their own uninsured motorist policies with State Farm. Finding that the purpose of Alabama's Uninsured Motorist Act was to protect those financially and ethically responsible enough to obtain automobile liability insurance from injuries caused by those not so responsible, the Court defined the phrase "legally entitled to recover damages" as follows:
[t]he insured must be able to establish fault on the part of the uninsured motorist, which gives rise to damages ... and must be able to prove the extent of those damages. In a direct action by the insured against the insurer, the insured has the burden of proving in this regard that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability.
Baldwin, 470 So.2d at 1233.
In Allstate Insurance Company v. Elkins, 77 Ill.2d 384, 33 Ill.Dec. 139, 396 N.E.2d 528 (1979), where a wife claimed uninsured motorist benefits for injuries sustained as a result of her husband's negligent driving, the lower court held that she was not legally entitled to recover damages from her husband because of the interspousal immunity provisions of the statute and, therefore, was not entitled to any uninsured motorist benefits.[2] The interspousal immunity provision *993 applied only in those situations where one spouse was attempting to recover in tort from the other spouse and was not applicable to a claim based on a contractual writing against a third person, the insurance company, for uninsured motorist benefits. The Appellate Court, however, reversed the holding that the defense of interspousal immunity could be raised by a third party, and stated: "[t]he words legally entitled to recover mean that the plaintiff must be able to establish fault on the part of the uninsured motorist which gives rise to damages." Id. 33 Ill.Dec. at 141, 396 N.E.2d at 530. The Illinois Supreme Court affirmed the Appellate Court and allowed recovery, stating as follows:
An analysis of the cases shows that recovery has been permitted when the claimant shows conduct on the part of the tortfeasor/spouse which would entitle the claimant to recover damages even though a defense available to the tortfeasor would defeat actual recovery. Thus, in Guillot v. Travelers Indemnity Co., (La. App. 1976), 338 So.2d 334, it was held that the doctrine of interspousal immunity did not bar the wife's recovery under an uninsured motorist endorsement because the defense was personal to the tortfeasor/spouse and was not available to his insurer. In De Luca v. Motor Vehicle Accident Indemnification Corp., 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482 (1966) and Sahloff v. Western Casualty and Surety Co., 45 Wis.2d 60, 171 N.W.2d 914 (1969), it was held that although the uninsured motorist, in an action against him, could have availed himself of a defense, based upon the statute of limitations, that defense was not available to his insurer.
* * * * * *
We agree with the Appellate Court that the proper interpretation of the words, "legally entitled to recover", means that the claimant must be able to prove the elements of her claim necessary to entitle her to recover damages. That the tortfeasor uninsured motorist in an action brought against him might be in a position to invoke a defense limitation or some form of statutory immunity is relevant to the question of the right to enforce payment, but does not affect the claimant's legal entitlement to recovery. In interpreting the provisions of an insurance policy, the intent of the parties is the most significant factor and any ambiguity should be construed in favor of the insured. Kaufmann v. Economy Fire and Casualty Co., 76 Ill.2d 11, [27 Ill.Dec. 742] 389 N.E.2d 1150 (1979). As we have heretofore noted, the parties are in agreement that the exclusion contained in the liability provision of the policy served to render defendant's husband an uninsured motorist. We find it difficult to agree that it was the intent of the parties that the exclusion invoked the uninsured motorist coverage and at the same time precluded recovery by the injured spouse on the basis of statutory interspousal immunity.
33 Ill.Dec. at 141-142, 396 N.E.2d at 530-531 (emphasis added).
In Barfield v. Barfield, 742 P.2d 1107 (Okla. 1987), where the decedent's family could not recover against the employer's insurance company, his family was allowed to recover under his uninsured motorist policy. The Court specifically held that:
(1) husband and driver were employees, rather than independent contractors; (2) exclusivity provisions of the Workers' Compensation Act precluded action against driver's estate; and (3) widow's receipt of workers' compensation benefits did not preclude recovery under husband's uninsured motorist policy.
Likewise, in Porter v. Shelter General Insurance Company, 678 F. Supp. 151 (S.D.Miss. 1988), it was held that an employee's recovery under his own uninsured motorist policy could not be reduced below the statutory minimum of $10,000 by the amount he had received from his employer's workers' compensation carrier for injuries sustained during the course of his employment which were caused by an uninsured motorist. The Court, however, set off the amount he had *994 recovered under workers' compensation against the supplemental benefits he had contracted for, over and above the statutory minimum.
In the alternative, if workers' compensation is the exclusive remedy as to an employer by an employee, can a third party who contracts with the employee have standing to invoke the exclusive remedy of workers' compensation? When USF & G wrote the coverage for Williams Ambulance Service's, it knew that Williams, a sole proprietorship, also provided workers' compensation insurance for its employees, yet included an express exclusion in the uninsured motorist policy. It appears that it was the intent of the parties to exclude the insurer from liability under the uninsured motorist policy in those situations where an employee's injury might be covered by workers' compensation. In the case sub judice, USF & G has interpleaded the compensation exclusion issue. Our case law suggests that the heirs of Williams and Medders, not USF & G, are the only parties with standing to raise the issue.
In Cossitt v. Nationwide Ins. Co., 551 So.2d 879 (Miss. 1989), an employee of Morrison Heights Baptist Church received $25,000.00 in workers' compensation benefits after she was injured on the job in an accident caused by an uninsured motorist. She also sought to recover under Morrison Heights' uninsured motorist policy. The workers' compensation carrier then intervened, seeking to recover the benefits it had paid from the uninsured motorist benefits the employee was entitled to recover. Cossitt, the injured employee, contended that § 71-3-71, giving the employer the right to recover against any other party responsible for such injuries or death, is limited to third party tortfeasors and does not extend to give a right of recovery against the employer's uninsured motorist carrier and thus, that Nationwide did not take the place of the actual tortfeasor. 551 So.2d at 886. We held that the circuit court erred in allowing the workers' compensation carrier to intervene and recover the injured employee's share of the uninsured motorist benefits. Id. at 887. Cossitt is distinguishable from the case sub judice only because the employee was injured by a third-party uninsured motorist, not a co-employee. What is the difference?
Similarly, in Bowen v. Majic Mart of Corinth, 441 So.2d 548 (Miss. 1983), we held that a workers' compensation carrier could not reduce its benefits to the employee by the amount already paid to her through her own personal policy of health and accident insurance. Bowen is in line with the decisions of the majority of jurisdictions which have barred such recovery by workers' compensation carriers against the workers' own uninsured motorist coverage. Cossitt, 551 So.2d at 886. See also, 2A Larson, Workmen's Compensation Law, § 71.23(a).
In Cossitt we stated that "[t]here was no provision in the employment contract or plan between Cossitt and Morrison Heights Baptist Church or Nationwide that any recovery under the Nationwide policy by any employee would be credited to the employer/carrier against workers' compensation benefits." Id. at 886. Likewise, in Harris v. Magee, 573 So.2d 646 (Miss. 1990), an employee was killed when his employer's truck, which he was repairing, was struck by an uninsured motorist. The same insurance company carried the employer's uninsured motorist policy as well as its workers' compensation coverage. We found that the carrier, after paying workers' compensation benefits to the deceased employee's family could not credit that payment toward the uninsured motorist benefits for which it was also obligated. Id. at 655-656. This brings many questions to mind. What if the Medders' co-employee, the driver of the ambulance, had personal uninsured motorist coverage? Would his family have been precluded from recovering under that policy over and above what they received under the workers' compensation death benefit? Had Medders' employer provided him with a life insurance policy, would today's decision preclude benefits because of the exclusivity of the workers' compensation remedy?
Medders' employer voluntarily elected uninsured motorist benefits; he could have rejected coverage. Once he contracted with his employees to so provide, he had a duty to make sure that he and his insureds were covered by the statutorily mandated coverage. *995 Had Mr. Williams, Medders' employer, been injured or killed in the accident, I seriously doubt whether he would have been excluded from coverage under the uninsured motorist policy. Under today's decision, the majority allows exclusions from coverage in situations where an employer believes that he has secured coverage for himself and his employees. The benefit Williams provided to his employees is comparable to disability or life insurance. Workers' compensation is not an exclusive remedy to avoid those obligations. When an employee is injured or killed on the job, the employer voluntarily pays those benefits for which he has contracted over and above the workers' compensation benefits. The majority errs, therefore, in stating that the payment of workers' compensation claims precludes recovery under the employer's uninsured motorist policy. To allow such an exclusion to stand is contrary to the intent and purpose of the uninsured motorist statute, and suggests that the exclusivity of workers' compensation bars eligibility for any other benefits the employer may voluntarily provide.
As distinguished from uninsured motorist coverage, workers' compensation is a remedial measure which covers only certain specified expenditures, medical expenses, and a minimal amount of lost wages over a limited period of time. It does not provide compensation for pain and suffering, or other damages accompanying a serious injury or death. Compensation for these losses are separate from what may be claimed under workers' compensation and thus, available only under the uninsured motorist coverage provided by the employer. Further, the majority's ruling in this case does not affect the employee's ability to recover under his own uninsured motorist coverage. Why, then, should he not be able to recover under his employer's policy?
Accordingly, the definition of "shall be legally entitled to recover" should be construed to mean that the injured party must be able to establish fault on the part of the uninsured motorist. Once he has done so, he is entitled to recover whatever damages are allowed by law. I would, therefore, reverse the case and hold that workers' compensation is not the exclusive remedy available to the Medders family and that a third party insurer cannot invoke the exclusivity of the workers' compensation remedy as a defense to payment on uninsured motorist policies for which it has contracted.
DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J., join this opinion.
NOTES
[1] The heirs assert that in State Farm Mutual Automobile Insurance Company v. Nester, 459 So.2d 787 (Miss. 1984), this Court has accepted the Poole opinion as established law. However, Nester's approbation of Poole concerns the issue of whether a vehicle is uninsured and the rule that an insurance policy cannot exclude coverage mandated by the uninsured motorist statute. It does not speak to the effect of the driver and owner not being liable to the claimant because of immunity.
[1] Under the Feres doctrine, no cause of action can arise against the United States government or its employees for injuries sustained by a member of the military occurring in the course of active military service.
[2] In Glaskox v. Glaskox, 614 So.2d 906 (Miss. 1992), we abolished parental immunity in those cases where a minor is injured in a vehicular accident caused by his parent's negligence. We recognized in Glaskox that any litigation is, in reality, between the child and the parent's insurance carrier, not between the parent and child. Id. at 911.