[Civ. No. 51827. Second Dist., Div. Four. Sept. 14, 1978.]

STEPHEN M. RANKIN, Plaintiff and Respondent, v.
WEST AMERICAN INSURANCE COMPANY,
Defendant and Appellant;
SULLY-MILLER, INC., et al., Defendants and Respondents.

COUNSEL

Parker, Stanbury, McGee & Babcock and Allison J. Stoltz, Jr., for Defendant and Appellant.

Veatch, Snow, Carlson, Quimby & Nelson, Wayne Veatch and Herbert F. Blanck for Defendants and Respondents.

No appearance for Plaintiff and Respondent.

OPINION

**FILES, P. J.**—This is a proceeding to compel arbitration of claims under the uninsured motorists statute (Ins. Code, § 11580.2). Petitioner (hereinafter Rankin) an employee of Sully-Miller Contracting Company, a wholly owned subsidiary of Union Oil Company of California, was injured in separate motor vehicle accidents on May 13, 1973, and November 6, 1973, each of which occurred while Rankin was, in the course and scope of his employment, operating a vehicle owned by Sully-Miller. Each of the accidents involved motorists who allegedly were uninsured.

At the time of the accidents Sully-Miller and Union Oil were insured under a policy issued by Continental Insurance Company which provided general liability coverage including motor vehicle coverage. This policy made no express provision for uninsured motorist coverage. Rankin, while operating the Sully-Miller vehicle in the course and scope of his employment, was an additional insured under the Continental policy. Rankin was also an insured under his personal policy of automobile liability insurance issued by West American Insurance Company, which policy did contain a provision for uninsured motorist coverage.

On or about January 7, 1976, Rankin filed with the American Arbitration Association[1] a demand for arbitration. Continental, Sully-Miller and Union Oil refused to arbitrate, claiming that the policy issued

---

[1]Insurance Code section 11580.2, subdivision (f), governing uninsured motorists coverage provides:

"The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. . . ."

by Continental did not provide uninsured motorist coverage. West American appeared in the arbitration proceeding but claimed that the coverage provided Rankin under its policy of insurance was secondary to any coverage afforded by Continental.

Thereafter Rankin commenced this proceeding. The matter was tried on declarations of the parties and the court made findings of fact, conclusions of law and its judgment granting Rankin's petition to compel arbitration as to West American but denying the petition as to Sully-Miller, Union Oil and Continental.

West American appeals from that judgment.[2]

Subject to certain specified exceptions, Insurance Code section 11580.2, subdivision (a)(1), requires that an automobile bodily injury liability policy must contain a provision insuring the insured for the sums (within limits) which he may be legally entitled to recover for bodily injury from the owner or operator of an uninsured motor vehicle. At the time here pertinent, that section also provided in part as follows: "The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle (1) completely, or (2) with respect to a natural person or persons designated by name when operating a motor vehicle. Either of such deletions by any named insured shall be binding upon every insured to whom such policy or endorsement provisions apply while such policy is in force, and shall continue to be so binding with respect to any continuation, renewal, or replacement of such policy by the named insured, or with respect to reinstatement of such policy within 30 days of any lapse thereof."

In opposition to Rankin's petition respondents submitted the declaration of Russell D. Johnson, Union Oil and Sully-Miller's insurance broker, who stated that in 1967 their liability insurance was carried by Aetna Casualty and Surety Company, and that as between Aetna and Union Oil a formal rejection of uninsured motorist coverage was signed on April 3, 1967.[3]

---

[2]The attorneys who appeared for Union Oil and Sully-Miller in the trial court have filed a brief on behalf of "respondents." We assume this designation includes Continental, but excludes Rankin, who is also a respondent in this appeal.

No appearance has been made in this court on behalf of Rankin.

[3]The writing signed by Union rejecting uninsured motorists coverage was as follows: "Fully recognizing that the UNINSURED MOTORIST LAWS of some States may be of mandatory nature, whereas other States and their laws may offer an opportunity to reject

The Aetna policy expired on November 1, 1972. The Continental policy which is involved here was written for the period November 1, 1972, to November 1, 1975.

With respect to Continental's policy, Mr. Johnson stated as follows: "In arranging for this coverage, Continental Insurance Company was presented copies of the previous coverage and we requested Continental to continue with the same coverage that had been supplied by Aetna. This, by its nature, would have included a rejection of uninsured motorist coverage. This new policy did require that Union Oil and Sully-Miller provide the first $100,000 of the insurance coverage with the Continental policy insuring only for amounts in excess of that self-insured deductible. Because the Continental policy continued the coverage provided by Aetna, it did not require that a new rejection of uninsured motorist coverage be executed because the existing rejection was believed to be adequate. However, at a later date it was thought advisable to reaffirm the rejection of uninsured motorist coverage and this was done on March 21, 1974, by a specific rejection executed by J. R. Courtney, Assistant Secretary of Union Oil Company of California, rejecting the coverage for the present policy of L 1477580 and any renewal thereof or any future policy that might be issued by Continental. A copy of this rejection is also attached hereto and is marked Exhibit 'B'."

Upon this record the trial court found that "by agreement between the insureds and the insurance company," the Continental policy did not contain uninsured coverage. Upon this finding the court concluded that such coverage had been lawfully deleted, thereby relieving Continental of the liability which the statute would otherwise have imposed.

■ For two reasons the 1967 agreement with Aetna cannot be construed as applicable to the Continental policy issued in 1972:

First, the statute requires "an agreement in writing" to delete the uninsured motorist coverage. The word "Agreement" implies a meeting

---

this insurance protection, we hereby voluntarily reject such insurance protection for our present policy and any renewal thereof or any future policy issued by The Aetna Casualty & Surety Company, in any and all States where such rejection is not contrary to law. This rejection shall stand unless and until written notice countermanding this rejection is furnished by us to The Aetna Casualty & Surety Company or its authorized agent. [¶] This rejection is made on behalf of all insureds under the policy as they are now and may hereafter be constituted, wherever permissible by law."

This agreement preceded the 1972 statute which amended Insurance Code section 11580.2 by adding in subdivision (a)(2) some language to be used in the agreement.

of the minds of two or more identifiable parties. Although the statute provides that the deletion "shall continue to be so binding with respect to any continuation, renewal or replacement of such policy," this language is premised on a written agreement between identified parties. A policy written by a stranger to the agreement would not come within this provision.

Second, the writing signed by Union in 1967 is, by its terms, limited to "our present policy and any renewal thereof or any future policy issued by the Aetna Casualty & Surety Company."

■ Respondents also seem to suggest that the 1974 agreement should somehow relate back to the inception of the Continental policy. While it is true that Insurance Code section 11580.2 provides that an agreement to delete uninsured motorist coverage may be entered into "prior to or subsequent to the issuance or renewal of a policy" nothing in the language of the statute indicates that an agreement entered into subsequent to the issuance of a policy could or should have a retroactive effect, cancelling claims of other insureds which had arisen during the interim.

Respondents cite no cases in support of their theory that the subsequently executed agreement applied at the time of the accidents involved here. While our independent research reveals no case involving this precise issue, it is clear that the public policy of this state favoring uninsured motorist coverage forbids an interpretation such as that suggested by respondents.

■ Section 11580.2 was designed to minimize losses to the people who are involved in accidents with uninsured and financially irresponsible motorists. The requirement that this coverage can be avoided only by an agreement in writing between the insurer and the named insured, is doubtless intended to prevent ill-advised or inadvertent waivers by uninformed persons. (See *Mission Ins. Co. v. Brown* (1965) 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275]; *California Cas. Indem. Exch. v. Steven* (1970) 5 Cal.App.3d 304, 306 [85 Cal.Rptr. 82]; *Hagar v. Elite Ins. Co.* (1971) 22 Cal.App.3d 505, 509 [99 Cal.Rptr. 423].)

This statute must be construed, in view of its purpose, to impose coverage unless the deletion agreement meets the statutory standard. (See *Dufresne v. Elite Insurance Co.* (1972) 26 Cal.App.3d 916, 921 [103 Cal.Rptr. 347, 55 A.L.R.3d 206]; Annot. 55 A.L.R.3d 216, 248.)

The facts of this case are atypical in that the named insured is a sophisticated business corporation, buying insurance under the guidance of its broker. Also, it appears likely that the real beneficiary of our decision will be another insurance company which would otherwise have been obliged to cover Rankin's claim. Nevertheless, the statute makes no exception for this combination of circumstances. Under the plain mandate of section 11580.2, Continental is obliged to insure Rankin for the sums which he may be entitled to recover from uninsured motorists within the limits specified in that section.

It is futile for respondents to argue their intent, or to point to provisions in the Continental policy which are inconsistent with uninsured motorist coverage. The liability of Continental rests not upon the policy language, but upon a statute. The language of its policy does not constitute an agreement to delete, within the meaning of section 11580.2, subdivision (a)(1).

Respondents point to the further anomaly that by reason of a reimbursement indorsement, the liability will ultimately fall upon Rankin's employer, Sully-Miller, or its parent, Union Oil, and that Rankin has already received workers' compensation in the amount of $4,983.20 from his employer, who is self-insured for that coverage.

We must regard any reimbursement agreement between the named insured and Continental as immaterial to the enforcement of Continental's statutory liability to Rankin.

Section 11580.2 contemplates that a worker who is entitled to worker's compensation for an injury caused by the negligence of a third party may also make a claim for uninsured motorists coverage where it is applicable, but subdivision (h) provides that his recovery under the uninsured motorists coverage shall be reduced by the amount paid under the worker's compensation law. Thus the fact that Rankin has received worker's compensation from his employer does not relieve Continental of its liability for the difference between the amount of damages which will be ascertained in the arbitration proceeding and the amount of worker's compensation paid and payable.

At oral argument Continental's counsel cited *Robinson* v. *State Farm Mut. Auto. Ins. Co.* (1972) 23 Cal.App.3d 953, 959 [100 Cal.Rptr. 565], for the proposition that the intention of the named insured and the insurer is controlling in determining whether or not there is an effective waiver of

uninsured motorists coverage. The issue in that case was whether a signed waiver applied to a renewal of the policy. The case arose prior to the 1971 amendment which declares that such a waiver agreement continues to be binding with respect to any continuation or renewal of the policy. The court was required to interpret the waiver agreement, and did interpret it as reflecting the intention of the parties that the waiver remain effective for renewals. That decision provides no analogy for the situation here, where there was no written waiver agreement between Continental and the named insured at the time the accidents occurred.

The remaining issue is the relationship between Continental's statutory coverage and that provided by West American's policy. Subdivision (c) of section 11580.2 provides:

"(c) The insurance coverage provided for in this section does not apply:

". . . . . . . . . . . . . . . . . . . .

"(2) To bodily injury of the insured while in or upon or while entering into or alighting from an automobile other than the described automobile if the owner thereof has insurance similar to that provided in this section.

". . . . . . . . . . . . . . . . . . ."

Since the owner of the automobile in which Rankin sustained injury was insured under the owner's policy written by Continental, the West American policy does not apply unless that automobile was a "described automobile" in the latter policy. (See *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243 [66 Cal.Rptr. 374].)

The trial court made a finding that West American "has failed to provide any evidence showing that its policy does not provide primary coverage for uninsured motorist." This finding is literally true, so far as the record shows. The language of the West American policy was not revealed in the trial court.

On a petition to compel arbitration, it is the duty of the trial court to determine whether or not the alleged insurance policy affords uninsured motorists coverage. (See *Harrison* v. *California State Auto. Assn. Inter-Ins. Bureau* (1976) 56 Cal.App.3d 657, 660 [128 Cal.Rptr. 514].) On remand West American will have an opportunity to produce evidence as

to the coverage of its policy, and the court may then decide whether West American's insurance is inapplicable by reason of subdivision (c)(2).

■ The superior court did not err in refusing to order Union and Sully-Miller to arbitrate, since there is nothing in section 11580.2 which requires the named insured to be a party to the arbitration proceeding.

The order of the superior court is reversed insofar as it applies to West American Insurance Company and Continental Insurance Company. As to Sully-Miller Contracting Company and Union Oil Company of California, it is affirmed. Appellant West American Insurance Company shall recover its costs against Continental Insurance Company.

Jefferson (Bernard), J., and Alarcon, J., concurred.