607 So.2d 747 (1992)
Rena HOGAN, Widow of Kenneth Leslie Hogan, and Pamela Hogan Phea, Laurie Hogan Carter and Lois Lynne Hogan, Daughters of Kenneth Leslie Hogan
v.
STATE FARM AUTOMOBILE INSURANCE COMPANY, Excalibur Insurance Company, Dairyland Insurance Company, Haynes & Sons, Inc., the City of Slidell, Department of Transportation and Development, State of Louisiana, Department of Highways, State of Louisiana and Oliver L. Owens.
No. 91 CA 1037.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
*748 Mickey S. deLaup, Metairie, for plaintiffs-appellants.
Anthony J. Clesi and Lynn H. Frank, New Orleans, and William D. Hughes, San Diego, Cal., for defendant-appellee.
Before LeBLANC and WHIPPLE, JJ., and COVINGTON[1], J. Pro Tem.
LeBLANC, Judge.
Plaintiffs appeal from a summary judgment which dismissed their claims against defendant, State Farm Automobile Insurance Company (State Farm), with prejudice. The parties dispute whether a $10,000.00 payment by State Farm to plaintiffs satisfies State Farm's obligations pursuant to the insurance policy in question which provided uninsured motorist coverage to the decedent on whose behalf this suit is filed by plaintiffs. We reverse and remand.
This litigation arises out of the death of Kenneth L. Hogan. On March 16, 1980, Mr. Hogan, a resident of California who was allegedly in Louisiana for business reasons, was struck by an automobile as he was walking on Front Street in Slidell, Louisiana. Mr. Hogan died five days after the accident. On November 26, 1980, Rena Hogan, Mr. Hogan's widow, and his three major daughters[2], filed a wrongful death action against a number of defendants.[3] These defendants included Mr. Oliver Owens, the driver of the automobile that struck Mr. Hogan; Dairyland Insurance Company (Dairyland), Mr. Owens' liability insurer; and State Farm, Hogan's uninsured motorist carrier. Owens and Dairyland were dismissed from the litigation on September 20, 1982, following Dairyland's payment of its policy limits of $5,000.00 to plaintiffs.
Also during September of 1982, affidavits of Rena Hogan and her attorney, Stephen N. Elliott, were filed into the record of this suit establishing that Rena Hogan had settled a worker's compensation claim against Midwestern Distribution, Inc. (Midwestern), Mr. Hogan's alleged employer at the time of the accident. Although these affidavits do not state the amount of the settlement, plaintiffs and State Farm do not dispute that the worker's compensation suit was settled for $10,000.00.
In October of 1982, plaintiffs' claims against another defendant insurer, Excalibur Insurance Company (Excalibur), which allegedly provided uninsured motorist coverage to the decedent, were settled for $10,000.00, after which Excalibur was dismissed from the suit. Eventually, all defendants were dismissed from the suit except State Farm. During 1983, State Farm and plaintiffs filed motions for summary judgment which were denied by the trial court.[4] On February 26, 1985, plaintiffs amended their petition seeking penalties, interest and reasonable attorney's fees, alleging that State Farm "... arbitrarily and capriciously refused and/or failed to pay its policy limit or a portion thereof `without strings attached' and has refused to negotigate (sic) settlement of this matter in good faith."[5]
In April of 1985, State Farm deposited $10,000.00 into the court registry and *749 sought a summary judgment in its favor. State Farm contended that the $10,000.00 payment satisfied its obligations under the policy; State Farm asserted that its policy limits were $15,000.00 and that, pursuant to California law, State Farm was entitled to deduct the $5,000.00 payment by Dairyland (representing payment by the alleged tortfeasor) from its obligation to the insured.[6]
At this point in the litigation, the parties came to an agreement that California law was applicable to the issue of State Farm's contractual liability under the policy.[7] However, the trial court denied State Farm's motion for summary judgment finding unresolved issues regarding the policy limits, whether State Farm owed legal interest and whether it was liable for penalties and attorney's fees.
On December 3, 1985, judgment was rendered allowing plaintiffs to withdraw the $10,000.00 that had been deposited into the court registry without prejudicing its claims against defendant. In July of 1986, State Farm once again filed a motion for summary judgment, contending that the $10,000.00 payment had satisfied its obligation under the policy. Plaintiffs opposed the motion contending that State Farm should not be entitled to deduct the $5,000.00 payment by the tortfeasor from the $15,000.00 policy limits[8], and arguing that additional sums were owed to plaintiffs for punitive damages, attorneys' fees and interest. During December of 1986, the trial court rendered judgment, denying State Farm's motion for summary judgment, concluding in its reasons for judgment that there were unresolved issues regarding legal interest and imposition of attorney's fees.[9]
During November of 1990, State Farm again filed a motion for summary judgment. In support of this motion, State Farm argued that it is "allowed to deduct from the face value of its UM coverage any amounts that the UM claimant receives (1) from the tort-feasor, (2) from a worker's compensation plan, and (3) from other UM carriers." More specifically, State Farm argued that its liability pursuant to the uninsured motor vehicle coverage should not only be reduced by the $5,000.00 sum which was paid by Dairyland, the alleged tortfeasor's liability insurer, but should also be reduced by the sum of $10,000.00, *750 the amount received by Mrs. Hogan from Midwestern, in settlement of her suit for worker's compensation benefits. State Farm further argued that its liability should be reduced by payments made to plaintiffs pursuant to other insurance policies providing uninsured motorist coverage. Thus, State Farm argued that it was also entitled to a reduction as a result of the $10,000.00 payment to plaintiffs by Excalibur, another insurer which allegedly provided UM coverage.
Since the payments made by Dairyland, Midwestern Distribution and Excalibur totalled more than $15,000.00 and were all paid to plaintiffs during 1982, State Farm urged that its obligation to plaintiffs was extinguished during that year. State Farm contended that it actually did not have any obligation to plaintiffs under the policy when the $10,000.00 payment was made during 1985; it asserts that the money was paid in error.[10] Although State Farm denied that any interest was owed to plaintiffs, it argued that if any interest was due to plaintiffs, the $10,000.00 payment to plaintiffs in 1985 was more than enough to satisfy any obligation due for interest. State Farm did not seek to have the $10,000.00 payment or any part of that payment returned to it.
By judgment dated April 1, 1991, the trial court granted State Farm's motion for summary judgment and dismissed plaintiffs' claims with prejudice. In its reasons for judgment, the court made the following findings:
There are no genuine issues of material fact regarding the amounts and dates of payments to plaintiffs from the tortfeasor, worker's compensation and other UM sources. The Court determines, as a matter of California law and under the policy, that State Farm is entitled to credit for these sums. State Farm's potential exposure was $15,000.00 and the credits exceeded $15,000.00, rendering State Farm's obligation extinguished by 1982. Plaintiffs' claim for legal interest was extinguished by the $10,000.00 paid to plaintiffs through the registry of the Court in 1985. The Court finds, as a matter of California law, plaintiff is not entitled to penalties or attorney's fees. [citations omitted]
Plaintiffs appeal the trial court's judgment, contending that the summary judgment in favor of State Farm was improper for several reasons. The essence of each of these arguments is that the amount tendered by State Farm in 1985 was insufficient to satisfy its obligations under the policy. Based on the record before us, we find that the summary judgment in favor of State Farm was improper. Accordingly, we reverse and remand this proceeding to the district court.
We first address plaintiffs' argument that the trial court improperly considered State Farm's claim for credits, based on the reduction clauses in the policy, for amounts paid under worker's compensation laws and amounts paid by other UM carriers.[11] Plaintiffs assert that the trial court erred in considering these claims because State Farm did not raise the matter of credits based on the reduction clauses as an affirmative defense. The record in this matter does in fact establish that the matter of credits was not raised in defendant's answer to plaintiffs' original petition or in its answers to plaintiffs' supplemental and amending petitions.
Regarding this issue, neither party argues that California law is applicable. Plaintiffs and defendant cite Louisiana statutory and jurisprudential authorities in support of their respective positions. This *751 court likewise finds that Louisiana law, as the law of the forum, is the applicable law to decide this procedural matter; i.e., whether the claims for credits must be pled in answer by defendant in order to be considered by the court. See, Patterson v. Patterson, 436 So.2d 603 (La.App. 4th Cir. 1983).
A defendant's answer must set forth any matter constituting an affirmative defense. La. C.C.P. arts. 1003, 1005. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the merits of a claim asserted in the petition. Keller v. Amedeo, 512 So.2d 385 (La.1987).
We find that defendant's claims for credit based on the reduction clauses in the policy are affirmative defenses. The issue of credits based on the reduction clauses is a defense raised by State Farm in order to defeat plaintiffs' claims that they are entitled to recover under the policy. Since State Farm is seeking to limit or relieve its liability under the policy based on the reduction clauses, State Farm has the burden of proving its entitlement to these credits. See, Vallery v. All American Life Ins. Co., 429 So.2d 513 (La.App. 3d Cir.), amended on other grounds, 434 So.2d 1100 (La.1983). The matter of credits is not an element of plaintiffs' prima facie case which plaintiffs are required to address to establish coverage under the policy. Thus, defendant's argument that the issue of credits is raised as a negative defense, rather than as an affirmative defense, has no merit.
The purpose for requiring affirmative defenses to be specifically pled is to provide plaintiffs with fair and adequate notice of the nature of the defense and to prevent surprise. Webster v. Rushing, 316 So.2d 111 (La.1975). The matter of credits for the amounts received by plaintiffs in settlement of the worker's compensation claim (the payment by Midwestern) and the other UM claim (the payment by Excalibur) was not raised as a defense by State Farm and was not even an issue considered by the trial court until State Farm raised the issue in its memorandum in support of its November, 1990 motion for summary judgment. At that point the parties had been involved in this litigation for more than ten years. Defendant cannot seriously contend that plaintiffs were not surprised by its claim in 1990 that, although State Farm tendered a $10,000.00 payment in 1985, it actually did not owe this sum under the policy. Since the issue of credits was never raised in an answer by State Farm, we conclude that the trial court erred in considering the issue of credits.
When no consideration is given to State Farm's claim for credits for the amounts paid by Midwestern and Excalibur, the record clearly establishes that State Farm's potential liability under the UM policy is $10,000.00 (the $15,000.00 policy limits reduced by the $5,000.00 payment by Dairyland), which amount has already been paid by State Farm into the court registry and received by plaintiffs.[12] Although State Farm has already paid this sum to plaintiffs, we note that no interest on this sum was tendered into the court registry or paid to plaintiffs. Louisiana jurisprudence clearly establishes that legal interest is due on amounts due under a UM policy from the date of judicial demand until tender of the amount due under the policy. La. R.S. 13:4203; Ainsworth v. Government Employees Ins. Co., 433 So.2d 709 (La.1983); Burton v. Foret, 498 So.2d 706 (La.1986).[13] Accordingly, we *752 conclude that State Farm's $10,000.00 tender in 1985, with no additional amount to cover the legal interest that would have accrued on that sum from the date of judicial demand, November 26, 1980, was insufficient to satisfy its obligations to plaintiffs. Accordingly, based on the record before us, we conclude that the summary judgment was not proper and we remand for further proceedings consistent with this opinion.[14] An assessment of all costs is to be made after final disposition of this matter.
REVERSED AND REMANDED.
NOTES
[1] At the time of this decision, Judge Grover L. Covington is serving in the capacity of judge pro tempore.
[2] The decedent's major daughters are Pamela Hogan Phea, Laurie Hogan Carter and Lois Lynne Hogan.
[3] Many of the original defendants have been dismissed from the proceedings and are not relevant to this appeal.
[4] The parties disputed whether the State Farm policy provided underinsured motorist coverage and, if it did provide such coverage, the amount of coverage provided under that part of the policy. Additionally, the parties disagreed as to whether California or Louisiana law should apply to resolve these issues. The trial court concluded that the State Farm policy did provide underinsured motorist coverage.
[5] Plaintiffs further amended the petition at a later date alleging State Farm's bad faith and seeking compensatory and punitive damages under California law.
[6] The State Farm policy includes, in pertinent part, the following language under that part of the policy entitled, SECTION IIIUNINSURED MOTOR VEHICLECOVERAGE U:

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle.
. . . . .
Payment of Any Amount Due We will pay any amount due:
. . . . .
3. to the surviving spouse.... Limits of Liability
. . . . .
2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured:
a. by or for any person or organization who is or may be held legally liable for the bodily injury to the insured;
. . . . .
c. under any worker's compensation, disability benefits, or similar law.
. . . . .
If There Is Other Coverage
1. If the insured is injured as a pedestrian and other uninsured motor vehicle coverage applies:
a. the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability; and
b. we are liable only for our share. Our share is that percent of the damages that the limit of liability of this policy bears to the total of all uninsured motor vehicle coverage applicable to the accident.
[7] The State Farm policy in question was issued and delivered in California by a California agent to Mr. Hogan, who was domiciled in California at the time the policy was delivered and on the date of the accident in question.
[8] In its October 8, 1986 reasons for judgment denying State Farm's motion for summary judgment, the trial court stated that "[t]he parties stipulation that the applicable uninsured motorist minimum coverage is $15,000.00, resolves the issue of which statutory limit was effective at the time of the accident."
[9] Also in the December 1986 judgment, the trial court denied an exception of no cause of action filed by State Farm regarding plaintiffs' bad faith claim.
[10] Apparently, at the time the $10,000.00 payment was made by State Farm, it did not realize that the insurance policy reduction clause pertaining to amounts paid for the insured under worker's compensation laws was enforceable under California law. Cal.Ins.Code § 11580.2(h)(1); Rankin v. West American Insurance Co., 84 Cal.App.3d 829, 149 Cal.Rptr. 57 (Cal. App. 2d Dist. 1978); Coltherd v. Workers' Comp. Appeals Bd., 225 Cal.App.3d 455, 275 Cal.Rptr. 130 (Cal.App. 4th Dist. 1990).
[11] On appeal, plaintiffs do not assert that defendant's liability should not be reduced by the $5,000.00 paid by Dairyland on Mr. Owens' behalf. Plaintiffs only contest defendant's claim for credits for sums paid by Midwestern and Excalibur.
[12] We note that since the trial court ruled during November of 1983, that the policy did include coverage for damages caused by an underinsured motorist, State Farm has not contended that plaintiffs are not entitled to UM coverage under the policy in question. Rather, State Farm has argued only that plaintiffs are not entitled to recover benefits because State Farm is entitled to a total sum of credits that is greater than the $15,000.00 policy limits involved herein.
[13] Since the UM policy in question does not specifically provide for an award of interest on sums due under the policy, we do not find that California law controls the issue of interest. Although the parties agree that California law is applicable to the issues of State Farm's contractual liability under the UM policy, the parties do not generally agree that California law controls all remaining issues raised in this litigation. Since the parties have not established, or even argued, that there is a conflict between the laws of Louisiana and California with respect to the issue of legal interest on amounts determined to be due under the UM policy, we conclude that Louisiana law is applicable to this issue.
[14] Due to our disposition of this matter, we pretermit some of plaintiffs' assignments of error. Additionally, we pretermit a ruling on defendant's motion to strike plaintiffs' supplemental brief, since the brief addresses a pretermitted issue, i.e., State Farm's alleged bad faith in handling the claim.