649 So.2d 45 (1994)
Mrs. Rena HOGAN, Widow of Kenneth Leslie Hogan, and Pamela Hogan Phea, Laurie Hogan Carter and Lois Lynne Hogan, Daughters of Kenneth Leslie Hogan
v.
STATE FARM AUTOMOBILE INSURANCE COMPANY, Excalibur Insurance Company, Dairyland Insurance Company, Haynes & Sons, Inc., the City of Slidell, Department of Transportation & Development, State of Louisiana, Department of Highways, State of Louisiana and Oliver L. Owens.
No. 94 CA 0004.
Court of Appeal of Louisiana, First Circuit.
December 22, 1994.
Writ Denied March 17, 1995.
*47 Mickey S. deLaup, Metairie, for plaintiffs/appellants.
Lynn H. Frank, New Orleans, for defendant/appellee.
Before EDWARDS, SHORTESS and LeBLANC, JJ.
LeBLANC, Judge.
Plaintiffs appeal a summary judgment dismissing their suit against defendant, State Farm Mutual Automobile Insurance Company (State Farm), seeking compensatory and punitive damages under California law for State Farm's alleged bad faith refusal to pay any portion of its policy limits. Plaintiffs' primary arguments on appeal are that the trial court erred in allowing State Farm to amend its answer to assert the affirmative defense of credits and in granting summary judgment to State Farm on the basis of this defense.

FACTUAL BACKGROUND
This litigation arises out of the death of Kenneth L. Hogan. On March 16, 1980, Mr. Hogan, a resident of California allegedly in Louisiana for business reasons, was struck by an automobile as he was walking on Front Street in Slidell, Louisiana. He died five days later. On November 26, 1980, Rena Hogan, Mr. Hogan's widow, and his three major daughters filed a wrongful death action against a number of defendants, including: Mr. Oliver Owens, the driver of the automobile that struck Mr. Hogan; Dairyland Insurance Company (Dairyland), Mr. Owens' liability insurer; and State Farm, Hogan's uninsured motorist carrier. Owens and Dairyland were dismissed from the litigation on September 20, 1982, following Dairyland's payment of its policy limits of $5,000.00 to plaintiffs.
Also during September of 1982, affidavits were filed into the record by Rena Hogan and her attorney, Stephen N. Elliott, establishing that a settlement of a worker's compensation claim against Mr. Hogan's alleged employer, Midwestern Distribution, Inc. (Midwestern), had been reached. It is undisputed that the settlement amount was $10,000.00.
In October of 1982, plaintiffs' claims against another insurer, Excalibur Insurance Company (Excalibur), which allegedly provided uninsured motorist coverage to the decedent, were settled for $10,000.00, following which Excalibur was dismissed from the suit. Eventually, all defendants except State Farm were dismissed.
On February 26, 1985, plaintiffs amended their petition seeking penalties, interest and reasonable attorney's fees, alleging that State Farm "... arbitrarily and capriciously refused and/or failed to pay its policy limit or a portion thereof `without strings attached' and has refused to negotigate (sic) settlement of this matter in good faith." Plaintiffs later amended the petition again, alleging bad faith by State Farm and seeking compensatory *48 and punitive damages under California law.
In April of 1985, State Farm deposited $10,000.00 into the court registry and sought a summary judgment in its favor. State Farm contended that the $10,000.00 payment satisfied its obligations under the policy; State Farm asserted that its policy limits were $15,000.00 and that, pursuant to California law, State Farm was entitled to deduct the $5,000.00 payment by Dairyland (representing payment by the alleged tortfeasor) from its obligation to the insured.
At this point in the litigation, the parties agreed that California law was applicable to the issue of State Farm's contractual liability under the policy.[1] However, the trial court denied State Farm's motion for summary judgment finding unresolved issues regarding the policy limits, whether State Farm owed legal interest and whether it was liable for penalties and attorney's fees.
On December 3, 1985, judgment was rendered allowing plaintiffs to withdraw the $10,000.00 that had been deposited into the court registry without prejudicing their claims against State Farm. In July of 1986, State Farm again filed a motion for summary judgment, contending the $10,000.00 payment had satisfied its obligation under the policy. Plaintiffs opposed the motion, contending State Farm should not be entitled to deduct the $5,000.00 payment by the tortfeasor from the $15,000.00 policy limits, and arguing that additional sums were owed to plaintiffs for punitive damages, attorney's fees and interest. During December of 1986, the trial court rendered judgment, denying State Farm's motion for summary judgment, concluding in its reasons for judgment that there were unresolved issues regarding legal interest and imposition of attorney's fees.
In November of 1990, State Farm again filed a motion for summary judgment. In support of this motion, State Farm argued that California law "allowed [it] to deduct from the face value of its UM coverage any amounts that the UM claimant receives (1) from the tort-feasor, (2) from a worker's compensation plan, and (3) from other UM carriers." More specifically, State Farm argued that its liability pursuant to the uninsured motor vehicle coverage should not only be reduced by the $5,000.00 sum which was paid by Dairyland, the alleged tortfeasor's liability insurer, but should also be reduced by the sum of $10,000.00, the amount received by Mrs. Hogan from Midwestern, in settlement of her suit for worker's compensation benefits. State Farm further argued that its liability should be reduced by payments made to plaintiffs pursuant to other insurance policies providing uninsured motorist coverage. Thus, State Farm argued that it was also entitled to a reduction as a result of the $10,000.00 payment to plaintiffs by Excalibur, another insurer which allegedly provided UM coverage.
Since the payments made by Dairyland, Midwestern Distribution and Excalibur totalled more than $15,000.00 and were all paid to plaintiffs during 1982, State Farm urged that its obligation to plaintiffs was extinguished during that year. State Farm contended that it actually did not have any obligation to plaintiffs under the policy when the $10,000.00 payment was made during 1985; it asserts that the money was paid in error.[2] Although State Farm denied that any interest was owed to plaintiffs, it argued that if any interest was due to plaintiffs, the $10,000.00 payment to plaintiffs in 1985 was more than enough to satisfy any obligation due for interest. State Farm did not seek return of any part of the $10,000.00 payment.
By judgment dated April 1, 1991, the trial court granted State Farm's motion for summary judgment and dismissed plaintiffs' claims with prejudice. Plaintiffs appealed, *49 arguing the amount tendered by State Farm in 1985 was insufficient to satisfy its obligations under the policy. This Court reversed, concluding the trial court erred in considering the issue of credits since State Farm had not affirmatively plead this defense. Hogan v. State Farm Auto. Ins. Co., 607 So.2d 747 (La.App. 1st Cir.1992). We further held that:
When no consideration is given to State Farm's claim for credits for the amounts paid by Midwestern and Excalibur, the record clearly establishes that State Farm's potential liability under the UM policy is $10,000.00 (the $15,000.00 policy limits reduced by the $5,000.00 payment by Dairyland), which amount has already been paid by State Farm into the court registry and received by plaintiffs. Although State Farm has already paid this sum to plaintiffs, we note that no interest on this sum was tendered into the court registry or paid to plaintiffs. Louisiana jurisprudence clearly establishes that legal interest is due on amounts due under a UM policy from the date of judicial demand until tender of the amount due under the policy. Accordingly, we conclude that State Farm's $10,000.00 tender in 1985, with no additional amount to cover the legal interest that would have accrued on that sum from the date of judicial demand, November 26, 1980, was insufficient to satisfy its obligations to plaintiffs. Accordingly, based on the record before us, we conclude that the summary judgment was not proper and we remand for further proceedings consistent with this opinion.
(Citations and footnotes omitted). 607 So.2d at 751-752.

ACTION OF TRIAL COURT
Upon remand, the trial court granted State Farm's motion for leave to amend its answer to plead the affirmative defenses of credit and extinguishment. Upon amending its answer, State Farm filed another motion for summary judgment. Plaintiffs responded with a motion to strike the amended answer and an opposition to the motion for summary judgment. While refusing to concede it owed any additional amount to plaintiffs, State Farm deposited $9,392.38 into the court registry to cover any interest which might be due, pending the outcome of its motion for summary judgment, in what it described as a "good faith" effort to resolve this matter. Plaintiffs were subsequently allowed to withdraw these funds.
On January 29, 1993, the trial court denied State Farm's motion for summary judgment, finding there were unresolved issues regarding the amount of interest owed and whether State Farm owed punitive damages under California law. The court also denied plaintiffs' motion to strike State Farm's amended answer. Pursuant to motion by State Farm, the trial court thereafter granted a new trial on State Farm's motion for summary judgment. After a second hearing, the trial court rendered summary judgment in favor of State Farm, relying on Rangel v. Interinsurance Exchange, 4 Cal.4th 1, 14 Cal.Rptr.2d 783, 842 P.2d 82 (1992), in concluding plaintiffs were not entitled to punitive, bad faith damages under California law. Plaintiffs have now appealed.
ISSUES
1. Whether the trial court erred in allowing State Farm to amend its answer to assert the defense of credits?
2. Whether the trial court erred in denying plaintiffs' motion to strike?
3. Whether the trial court erred in granting State Farm's motion for a new trial?
4. Whether the trial court erred in granting summary judgment based on the court's conclusion that plaintiffs had no right to recover on a bad faith and/or breach of contract claim against State Farm for its failure to timely pay policy benefits allegedly due?
5. Whether this Court's prior decision in Hogan v. State Farm Auto. Ins. Co., 607 So.2d 747 (La.App. 1st Cir.1992), constitutes the law of the case precluding summary judgment in favor of State Farm?

ISSUES ONE AND TWO: AMENDMENT OF ANSWER AND MOTION TO STRIKE
On appeal, plaintiffs maintain the trial court erred both in allowing State Farm to *50 amend its answer on remand and in denying plaintiffs' motion to strike the amended answer. Review of these two rulings turns on a single issue, i.e., whether the trial court abused its discretion in granting State Farm leave to amend its answer. If it was within the trial court's discretion to allow the amendment asserting credits, the denial of plaintiffs' motion to strike this amendment was also within its discretion.
La.C.C.P. art. 1151 provides, in pertinent part:
A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the ... answer may be amended only by leave of court or by written consent of the adverse party.
Further, La.C.C.P. art. 1155 provides:
The court, on motion of a party, upon reasonable notice and upon such terms as are just, may permit mover to file a supplemental petition or answer setting forth... defenses which have become exigible since the date of filing the original ... answer, and which are related to or connected with the ... defenses asserted therein.
The provisions of the Louisiana Code of Civil Procedure are not considered an end in themselves and should be construed liberally so as to implement the substantive law. La. C.C.P. art. 5051. Accordingly, amendments to pleadings should be liberally allowed, provided the movant is acting in good faith, the amendment is not sought as a delaying tactic, the opponent will not be unduly prejudiced, and trial of the issues will not be unduly delayed. The decision as to whether to grant a defendant leave to amend an answer is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal except where an abuse of discretion has occurred and indicates a possibility of resulting injustice. Premier Bank, Nat. Ass'n v. Robinson, 618 So.2d 1037, 1039-40 (La.App. 1st Cir.), writ not considered, 619 So.2d 541 (1993); Moon v. City of Baton Rouge, 522 So.2d 117, 125 (La.App. 1st Cir.1987), writs denied, 523 So.2d 1319, 1320 and 1327 (1988).
In the present case, the trial court allowed State Farm to amend its answer to allege the defense of credits based on the court's conclusion that "such amendment was necessary to bring all substantive issues before the court and did not retard the progress of the case." We find no error or abuse of discretion in the trial court's determinations. The record does not indicate that the amendment to State Farm's answer was made in bad faith or with an intent to delay these proceedings. Moreover, plaintiffs had adequate notice and opportunity to prepare a response to the defense raised in the amended answer, and have not demonstrated how they were prejudiced by the amendment.
Further, plaintiffs' assertion that our prior decision in this matter constitutes the law of the case, establishing that the issue of credits was not timely pled by State Farm, is based on a misunderstanding of the holding in our earlier opinion. While this Court did note in the prior appeal of this matter that the defense of credits was not pled in State Farm's answer, the issue of whether this defense could be pled on remand was neither raised nor considered by this Court. Hogan, 607 So.2d at 748-49.
Moreover, Jacobs v. Grayson, 432 So.2d 1036 (La.App. 1st Cir.1983), the case relied on by plaintiffs as support for the argument that a defendant is not allowed on remand to amend an answer to assert credits is factually distinguishable from the case herein. In Jacobs, an appeal from a final judgment rendered after trial, we remanded the case to the trial court for the limited purpose of retaking certain testimony not included in the transcript. In view of the limited purpose of the remand, this Court held that the trial court correctly denied defendant's motion to amend his answer, which was made during the remand. In contrast, the remand in the instant case was not limited, having been made on the basis that the record before the Court did not support a summary judgment. Hogan, 607 So.2d at 752.
Having concluded the trial court did not abuse its discretion in allowing State Farm to amend its answer, we likewise find that the denial of the motion to strike the amended answer was also within the court's *51 discretion. Motions to strike are not favored in the law and should not be granted unless clearly warranted. Mack v. Southern Farm Bureau Casualty Insurance Company, 439 So.2d 1122 (La.App. 1st Cir.), writ denied, 442 So.2d 461 (La.1983). In the present case, the amendment to State Farm's answer was made in accordance with the leave granted by the trial court. The court's denial of plaintiffs' motion to strike was within its discretion.

ISSUE THREE: MOTION FOR NEW TRIAL
In the present case, State Farm requested that the trial court grant a new trial on its motion for summary judgment in order to reconsider fundamental rules of California law which allegedly had been overshadowed by consideration of other issues. In brief, State Farm also alleges that the issuance of the California Supreme Court's decision in Rangel v. Interinsurance Exchange, 4 Cal.4th 1, 14 Cal.Rptr.2d 783, 842 P.2d 82 (1992), provided grounds for a new trial, since this decision elucidated a previously unclear area of law. In opposition, plaintiffs contend there was "no `good ground' for the motion and no new issue of law raised."
La.C.C.P. art. 1973 provides that a trial court may grant a new trial in any case where good grounds exist. The granting or denying of a motion for new trial under this article rests within the wide discretion of the trial court, and its determination should not be disturbed absent a clear abuse of that discretion. Pinion v. Louisiana Farm Bureau, 590 So.2d 1230, 1234 (La.App. 1st Cir. 1991), writ denied, 592 So.2d 1301 (La.1992).
Considering the wide discretion afforded the trial court, as well as the complexity of the California law at issue, we find no abuse of discretion in the trial court's granting of a new trial to reconsider the application of California law to this case.

ISSUES FOUR AND FIVE: SUMMARY JUDGMENT
On appeal, plaintiffs argue the summary judgment dismissing their suit was improper because an issue remains in this case regarding whether State Farm's failure to timely pay money due under the UM policy was in bad faith, subjecting State Farm to penalties, attorney's fees and punitive damages under California law.
A motion for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there are no genuine issues of material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Louisiana Nat. Bank v. Slaughter, 563 So.2d 445, 447 (La.App. 1st Cir.1990). In the present case, after considering the applicable California law, we find the summary judgment dismissing plaintiffs' claims for bad faith damages was proper.
State Farm's motion for summary judgment was based on its claim that it was entitled, under the terms of the policy, to reduce the amount due under its UM coverage by the amounts paid to plaintiffs by the tortfeasor and the worker's compensation insurer.[3] Since these payments equalled the amount of the policy limits, State Farm argued that the credits it was entitled to for these payments, pursuant to the policy's reduction clause, totally extinguished its potential liability for UM benefits. State Farm further maintains that it accordingly cannot be liable under California law for bad faith damages because it did not owe any benefits under the policy. The trial court agreed, citing Rangel v. Interinsurance Exchange, 4 Cal.4th 1, 14 Cal.Rptr.2d 783, 842 P.2d 82 (1992), in support of its judgment dismissing plaintiffs' claim for bad faith damages.
It is well-settled under California law that, if an insurer fails to deal fairly and in good faith with it insured by refusing, without proper cause, to compensate its insured for a *52 loss covered by the policy, this conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. Brandt v. Superior Court (Standard Ins. Co.), 37 Cal.3d 813, 210 Cal. Rptr. 211, 213, 693 P.2d 796, 798 (1985). The insurer's duty is to not unreasonably withhold payments due under the policy. Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 271 Cal.Rptr. 246 (4th Dist.1990). Thus, an essential element for establishing breach of the implied covenant of good faith is that benefits are due under the policy. Love, 271 Cal. Rptr. at 255; Horsemen's Benev. & Prot. Ass'n v. INA, 222 Cal.App.3d 816, 822, 271 Cal.Rptr. 838, 841 (1st Dist.1990).
The policy at issue herein provides $15,000.00 in UM coverage. This policy also contains a reduction clause under the section dealing with UM coverage, providing that:
2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured:

a. by or for any person or organization who is or may be held legally liable for the bodily injury to the insured;

b. for bodily injury under the liability coverage; or
c. under any worker's compensation, disability benefits, or similar law.
Thus, this provision provides for the reduction of UM coverage by any amounts paid to plaintiffs by the tortfeasor and/or the worker's compensation carrier. Such reduction clauses are valid and enforceable under California law. Cal.Ins.Code § 11580.2(h)(1); Coltherd v. Workers' Comp. Appeals Bd., 225 Cal.App.3d 455, 459, 275 Cal.Rptr. 130, 132-33 (4th Dist.1990); Rankin v. West American Insurance Co., 84 Cal.App.3d 829, 836, 149 Cal.Rptr. 57, 61 (2d Dist.1978).
During or prior to September of 1982, plaintiffs settled with and received $5,000.00 from the alleged tortfeasor's insurer and $10,000.00 in settlement of a worker's compensation claim against Mr. Hogan's alleged employer. Because we have held that State Farm's answer was properly amended to assert the defense of credits, State Farm was entitled to claim credits for both the $5,000.00 payment made to plaintiffs on behalf of the tortfeasor, as well as the $10,000.00 payment made in settlement of plaintiffs' worker's compensation claim. Since the total of these credits equals the $15,000.00 limits of State Farm's UM liability, plaintiffs were not entitled to recover any UM benefits under the policy.[4] Therefore, the trial court correctly dismissed plaintiffs' claim for bad faith damages since there can be no recovery for such damages under California law when no benefits are due under the policy. See, Love, 271 Cal.Rptr. at 255; Horsemen's, 271 Cal.Rptr. at 841.
Although the amount of the credit due State Farm for payment of plaintiffs' worker's compensation claim could not be determined until the settlement of that claim in 1982, Rangel v. Interinsurance Exchange, 4 Cal.4th 1, 14 Cal.Rptr.2d 783, 842 P.2d 82 (1992), held that a UM insurer is not required to pay any benefits until the plaintiffs' workers' compensation claim is resolved. In Rangel the California Supreme Court held that the intent of the state law authorizing an insurer to reduce the loss payable to the insured by the amount paid under a worker's compensation claim was to prevent double recovery. 14 Cal.Rptr.2d at 786. Since the amount of the insurer's credit under the policy's reduction clause for worker's compensation payments could not be determined pending resolution of that claim, the Rangel court held that the insurer was not obligated to pay UM benefits during the pendency of the plaintiff's worker's compensation claim. Therefore, the California Supreme Court held that the UM carrier had not breached its duty of good faith and fair dealing or engaged in unfair settlement practices by delaying payment pending the outcome of the worker's compensation proceeding. Rangel, 14 Cal.Rptr.2d at 793, 842 P.2d at 92.
*53 Plaintiffs argue that Rangel is not applicable herein because of significant factual distinctions from the present case. While factual differences do exist, we do not believe these differences affect the underlying rationale of Rangel which allows a delay in payment of UM benefits during the pendency of a worker's compensation claim in order to prevent double recovery by plaintiffs.
Finally, plaintiffs argue that summary judgment based on State Farm's claim for credits was not proper because State Farm either waived or was estopped from claiming these credits because of its extensive delay in asserting any claim for credits. We disagree.
In general, estoppel is not favored under our law. Graham Resources v. Lexington Ins., 625 So.2d 716, 719 (La.App. 1st Cir.1993), writ denied, 93-2809 (La. 1/13/94); 631 So.2d 1164. Further, the application of the doctrine of estoppel is not permitted in the area of insurance law to extend or enlarge coverage beyond that set forth in the policy. Graham, 625 So.2d at 719-20. This rule has been applied even in instances where the insurer has misrepresented to the insured that there was coverage under the policy until shortly before trial and even tendered a check to settle the claim. See, Balehi Marine v. Firemen's Ins. Co. of Newark, 460 So.2d 16, 17 (La.App. 1st Cir.1984), writ denied, 462 So.2d 654 (1985); Hunter v. Office of Health Services, Etc., 385 So.2d 928, 937 (La.App. 2nd Cir.) writs denied, 393 So.2d 737 (1980). Any misrepresentations made by State Farm regarding coverage in the instant case appear to have been due to unfamiliarity with or misunderstanding of California law by State Farm's attorneys. In the present case, application of the doctrine of estoppel is inappropriate since it would extend coverage under the State Farm policy beyond what was contemplated by the parties.
For this reason, we also find no merit in plaintiffs' argument that State Farm waived its right to claim credits by failing to assert these credits for over ten years. Waiver is generally defined as the intentional relinquishment of a known right. The relinquishment must be expressly, knowingly and voluntarily made. Aldredge v. Aldredge, 477 So.2d 73, 75 (La.1985); Big River Const. v. University Club I Apts., 598 So.2d 542, 544 (La.App. 1st Cir.1992); Moreover, as with estoppel, a plea of waiver may not be used to extend coverage under an insurance policy. See, Graham, 625 So.2d at 720.

CONCLUSION
For the above reasons, the summary judgment dismissing plaintiffs' claim for bad faith, punitive damages is affirmed. Plaintiffs are to bear all costs of this appeal.
AFFIRMED.
NOTES
[1] The State Farm policy in question was issued and delivered in California by a California agent to Mr. Hogan, who was domiciled in California both at the time of delivery and on the date of the accident in question.
[2] Apparently, at the time the $10,000.00 payment was made by State Farm, it did not realize that the insurance policy reduction clause pertaining to amounts paid for the insured under worker's compensation laws was enforceable under California law. Cal.Ins.Code § 11580.2(h)(1); Coltherd v. Workers' Comp. Appeals Bd., 225 Cal. App.3d 455, 275 Cal.Rptr. 130 (4th Dist.1990); Rankin v. West American Insurance Co., 84 Cal. App.3d 829, 149 Cal.Rptr. 57 (2d Dist.1978).
[3] State Farm claims it is also entitled to a credit for the $10,000.00 payment received by plaintiffs on October 10, 1982, from Excalibur, the workers' compensation carrier of Hogan's alleged employer, Midwestern Distribution, Inc. We need not consider this issue, however, because the earlier payments received by plaintiffs on behalf of the tortfeasor and the workers' compensation insurer together equal the limits of State Farm's UM coverage.
[4] Plaintiffs' reliance on the statement in our prior opinion (Hogan, 607 So.2d at 751) to the effect that the record clearly establishes that State Farm's potential liability under the UM policy was $10,000.00 is misplaced. This statement was made on the basis that no consideration be given to State Farm's claim for credits, since that defense had not been properly plead at that time. Thus, this assessment of State Farm's potential liability has no validity once the defense of credits could properly be considered pursuant to State Farm's amended answer.