laHILLARY J. CRAIN, Judge Pro Tem.
This suit was instituted by plaintiff, Tele-cable Associates, Inc., to recover 1990 ad valorem taxes paid under protest. Defendants are Jewette Farley, Lincoln Parish Assessor, Michael Wooden, Morehouse Parish Assessor, and the Louisiana Tax Commission.
Defendants, Mr. Farley and Mr. Wooden, are appealing the district court’s judgment which reversed the Louisiana Tax Commission’s determination regarding the assessed property value and the resulting ad valorem taxation of Telecable Associates, Inc.’s personal property, and which ordered the return of the taxes paid under protest.
FACTS
Telecable owns a cable television business which services several parishes in Louisiana, including Lincoln and Morehouse. Telecable has done business in Lincoln and Morehouse for a number of years. For the 1989 tax year, Lincoln Parish Assessor, Jewette Farley, formulated a new method for valuing Telecable’s personal property on which ad valorem taxes were based. Morehouse Parish Assessor, Michael Wooden, followed the Lincoln Parish lead and used Mr. Farley’s mode of evaluation. Telecable did not timely appeal the 1989 assessments. The same method was used by both assessors for the 1990 taxes.
Telecable disputed the method of valuation and the resulting ad valorem taxes for 1990. A hearing was held by the Louisiana Tax Commission (“LTC”). The LTC upheld the assessments.
Suit was brought in district court requesting judicial review of the LTC’s determination. All three defendants answered the suit, denied the incorrectness of the LTC’s ruling and prayed for dismissal. Later, the LTC moved for an order allowing amendment of its answer. This amended answer admitted that the manner of assessment used by the assessors was improper and unauthorized under statute and constitution, and requested *281 judgment ordering plaintiffs property to be assessed in a proper manner. |3Pefendants, Mr. Farley and Mr. Wooden, objected and moved to strike the amended answer.
The district court heard argument on the motions and the merits of the case. The court granted the motion to amend, denied the motion to strike, and rendered judgment reversing the LTC’s decision and ordering the refund of the taxes paid under protest with interest. Costs were to be paid by the defendants. Mr. Farley and Mr. Wooden appealed, assigning as error 1) the district court’s grant of LTC’s motion to amend, 2) the district court’s reversal of the LTC’s decision, and 3) the district court’s taxation of costs against them in violation of La.R.S. 47:1998(0).
ANALYSIS
When this matter was initially brought before the LTC, the Commission ruled in favor of the assessors’ methodology in valuing Telecable’s personal property for ad valo-rem tax purposes. LTC supported its position when first answering this lawsuit. It was only later, after the LTC had been faced with the same challenge, that its opinion concerning the validity of the two assessors’ methodology changed, and it requested permission to amend its answer to better reflect its views.
Amendment of LTC’s Answer
Defendants, Mr. Farley and Mr. Wooden, argue that the action by the LTC in amending their answer constituted an ultra vires act which had the effect of a reclamation of jurisdiction by the commission. Defendants further argue that by amending their answer, the commission reversed itself and rendered a new decision without authority. We find no merit in defendants’ arguments.
Any pleading signed by an attorney is a certification that it is grounded in fact and warranted by law or a good faith argument for the extension, modification, or reversal of existing law. La.C.CJP. art. 863. The mandates of La.C.C.P. art 863 would be breached if a party maintains a position that it no longer believes is legally valid.
Furthermore, the reversal of its position does not return jurisdiction to the LTC. Jurisdiction is now vested with the |4court. The court must review the decision of the agency and such review is limited to the record. La.R.S. 49:964. The LTC’s change in position does not require the court to abdicate its authority to review the agency decision and certainly does not vest jurisdiction in the LTC.
Louisiana Code of Civil Procedure article 1151 allows amendment of an answer by leave of court or with the written consent of the adverse party if more than ten days have elapsed since the answer was served. The decision to allow the amendment is within the sound discretion of the district court, and its ruling will not be disturbed on appeal except where an abuse of discretion has occurred and indicates a possibility of resulting injustice. Hogan v. State Farm Automobile Insurance Company, 94-0004, p. 7 (La.App. 1st Cir. 12/22/94), 649 So.2d 45, 50, writ denied, 95-0215 (La. 3/17/95), 651 So.2d 276. We find no such abuse of discretion.
Determination of Fair Market Value
Appellants, Mr. Farley and Mr. Wooden, further contend that the trial court erred in reversing the Commission’s decision which upheld the assessments. The dispute concerns the proper method of valuing Tele-cable’s personal property in Lincoln and Morehouse Parishes. All parties agree that the value of Telecable’s personal property for ad valorem tax purposes in the present dispute should not include the value of real property or vehicles.
Assessor Jewette Farley devised the method used by both he and Mr. Wooden to value plaintiffs property. This method combined three approaches to property valuation: the income approach, the market approach, and the cost approach.
The property was evaluated by looking at income. The number of subscribers were multiplied by an average subscriber revenue. A factor of 50% for operating expenses was used to decrease the figure. The result was then applied against á capitalization rate to arrive at a total value.
*282 15The market approach to valuation was also used. Data was obtained from the “Ka-gan Report”,[2] a trade publication for the cable television industry, which contains current sales figures for cable systems. From this report, average sales prices per subscriber of cable systems were obtained. The national averages found were $2,400 in 1989 and $2,000 in 1988. Louisiana’s averages were $1,600 in 1989 and $1,800 in 1988. A recent sale of a Louisiana system at $2,000 was noticed. Mr. Farley chose the figure of $2,000 per subscriber as the value of Teleca-ble’s cable system. He then subtracted $1,000 from $2,000 to arrive at his estimation of the value of Telecable’s personal property using the market approach. He made this subtraction to account for his determination of the property value of items which were not subject to assessment for ad valorem tax purposes. The number of Telecable subscribers was multiplied by $1,000 to establish the total value using a market approach.
The cost approach was also employed. Mr. Farley testified that he used the LTC’s guidelines to arrive at the total value according to a cost approach to fair market value.
Mr. Farley then weighted the three approaches according to what he deemed the strengths and weaknesses of each approach. The record does not reflect what these factors were. The income approach was assigned a weight of 30%, the market approach was assigned a weight of 50%, and the cost approach was assigned a weight of 20%.
The final value assigned to Telecable’s personal property was derived by multiplying the value from each approach by the percentage given to that approach, and adding the resulting three figures to find the fair market value of the property.
Telecable argues that the methodology of the two assessors was in derogation of statutory and constitutional authority. More particularly, Telecable argues that, by employing this unique manner of assessment, the requirement for uniformity in determining | fifair market value of property subject to assessment necessary under La. Const, art. VII, § 18 and La.R.S. 47:2323 was not met.
Article VII, Section 18 of the Louisiana Constitution of 1974, addresses ad valorem taxation, and provides in pertinent part:
(A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraph (C), shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
(B) Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:
Classifications Percentages
1. Land 10%
2. Improvements for residential purposes 10%
3. Electric cooperative properties, excluding land 15%
4. Public service properties, excluding land 25%
5. Other property 15%
The legislature may enact laws defining electric cooperative properties and public service properties.
‡ ‡ ‡ ‡ ‡ ‡
(D) Valuation. Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor. Each assessor shall determine the use value of property which is to be so assessed under the provisions of Paragraph (C). Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state. (Emphasis added.)
Louisiana Revised Statute 47:2323 contains the criteria for determining fair market value and reads, in part:
A. The criteria for determining fair market value shall apply uniformly throughout the state. Uniform guidelines, procedures and rules and regulations as are necessary to implement said criteria *283 shall be adopted by the Louisiana Tax Commission only alter public hearings held pursuant to the Administrative Procedures Act. (Footnote omitted.)
B. Each assessor shall follow the uniform guidelines, procedures, and rules and regulations in determining the fair market value of all property subject to taxation within his respective parish or district. Any manual or manuals used by an assessor shall be subject to approval by the Louisiana Tax Commission or its successor agency. (Emphasis added.)
As indicated by the constitutional and statutory provisions, statewide uniformity in determining fair market value is mandated. RThe LTC must adopt, when necessary, uniform guidelines, procedures, rules, and regulations, which must be followed by each assessor.
The methodology developed and implemented by the two assessors was unique. The criteria was not formulated by the LTC as required by La.R.S. 47:2323 and was not used throughout the state, but only in the two parishes. Furthermore, no other businesses in the two parishes were assessed in this manner, with the exception of other cable companies. Statewide uniformity did not occur.
Assessors Farley and Wooden did not follow the guidelines developed by the LTC. The only guidelines, as evidenced in the record, which are applicable to this matter are entitled “Guidelines for Ascertaining the Fair Market Value of Office Furniture and Equipment, Machinery and Equipment, and Other Assets Used in General Business Activity”, and provide, in part:
The fair market value of office furniture and equipment, machinery and equipment, and other assets used in general business activity can best be estimated by the cost approach. This approach allows the assessors across the State of Louisiana to fairly and uniformly assess business and industrial personal property, while, at the same time, allowing each assessor the discretion that is necessary to accommodate modernization, facelifting of equipment, and obsolescence. (Emphasis added.)
The guidelines give detailed procedures to follow. As part of these procedures, the economic and/or functional life of the personal property of a business must be determined. To assist the assessor, the LTC has compiled a list of “most of the principal activities and types of machinery and equipment used in business throughout this state” which shows “an estimate of the average economic life of the equipment as experienced by the particular business or industry.” On the list of business aetivity/type of equipment is “C.A.T.V. equipment” and “ca-blevision systems.”
The LTC has determined that the best method for determining fair market value of the personal business and industrial property used in general business activity is the cost approach. The Commission has also established that cable systems fall within the category of business activity and type of equipment which is best assessed by the cost approach. Assessors Farley and Wooden were required to follow the guidelines established by the LTC. La.R.S. |847:2323(B). They did not. Moreover, statewide uniformity, as required by statute and the constitution, is impossible when an arbitrary formula for calculating fair market value is employed in only two parishes in the state. The assessments and resulting ad valorem taxes were improper. The ruling of the LTC, upholding the assessments, must be reversed. The district court was correct in doing so.[3]
Fair market value and assessed value of the personal property located in Lincoln and Morehouse Parishes were calculated by Jimmie F. Taylor, CPA and Treasurer of Teleca-ble Associates, Inc. By affidavit, Mr. Taylor declared that these values were calculated by using Telecable’s rendition of personal property submitted to the assessors and applying the appropriate constitutional and statutory provisions and the rules and regulations of the LTC. This calculation was verified by *284 plaintiffs witness, Donald R. Turlington, an independent appraiser and ad valorem tax consultant. The assessed values were determined by using the cost approach — the correct approach according to the LTC guidelines.
Attached to Telecable’s petition is a schedule of ad valorem taxes paid under protest, which includes a list of assessment numbers with the corresponding amounts of total taxes paid, taxes not protested and taxes protested. Although Mr. Farley and Mr. Wooden disagree with Teleeable as to the proper approach in assessing fair market value and the resulting assessed value, the record does not contain evidence of the assessor’s disagreement with the tax figures contained on Telecable’s schedule. The district court ordered a refund of the taxes paid under protest as described in Teleeable’s schedule. We find no error.
The judgment also awarded Telecable interest of two percent per annum or at such higher rate as may be permitted by law. Louisiana Revised Statute 47:1998(F) allows an award of interest of Rtwo percent per annum from the date of payment under protest until a refund is made, if the taxpayer prevails in the suit to recover taxes. We therefore find no error in the district court’s judgment ordering a refund of the taxes paid under protest together with interest at the rate of two percent per annum.
Assessors Farley and Wooden also argue that the district court’s assessment of costs against them was in error, citing La. R.S. 47:1998(0) which provides: “The assessor shall bring suit, when necessary to protect the interest of the state, and shall also have the right of appeal and such proceedings shall be without cost to him or the state.” This provision is clear in shielding the assessor from liability for costs where the assessor has to bring suit to enforce the payment of taxes. Assessment of costs against Mr. Farley and Mr. Wooden was proper.
DECREE
For the foregoing reasons, the district court’s judgment, ordering a refund of taxes paid under protest together with interest at the rate of two percent per annum, is AFFIRMED. All costs are assessed against Farley and Wooden.
AFFIRMED.

. The record does not indicate the publication’s correct title.

. Telecable also poses arguments for reversal of the LTC's decision on the grounds of equal protection violations. First Amendment violations, and the improper taxation of intangibles. Our findings based on La. Const, art. VII, § 18 and La.R.S. 47:2323 obviate the necessity for consideration of these issues.